# STATE OF OREGON
*Respondent,*

*v.*

# ROBERT DALE HAMMOND, JR.
*Appellant.*

(87081603; CA A48263)

781 P2d 1243

Peter Gartlan, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals his conviction for driving while suspended. ORS 811.175. He assigns as error the trial court's denial of his motion to suppress. We affirm.

These facts are undisputed and are substantially incorporated in the court's findings. On July 31, 1987, Officer Anderson of the Fish and Game Division of the Oregon State Police was at a public boat ramp on the Santiam River. It was his practice to check anglers to determine whether they were properly licensed. He had parked his police vehicle near the ramp. He approached defendant, who was loading a boat onto a trailer attached to a truck with Washington state plates. Anderson asked defendant whether he had been fishing. Defendant stated that he had, and Anderson asked to see his license.[1] Defendant showed him a resident fishing license that stated that he had been an Oregon resident for eight months.[2] Anderson became suspicious about the validity of the license because of the out-of-state plates. He arranged over the radio in his vehicle for a call to be placed to the residence listed on the fishing license. The court did not find whether Anderson retained the license during the inquiry. Defendant continued to load his boat onto the trailer. Anderson learned over the radio that defendant had lived at the residence for only a week or two.

When defendant had finished loading his boat, Anderson saw him drive off the ramp to where Anderson was parked. He told defendant that he intended to cite him for a

---

[1] ORS 497.036 provides, in part:

"The holder of any license, tag or permit to guide, angle, hunt or trap must consent to the inspection of any such license, tag or permit and any wildlife taken pursuant to such license, tag or permit:

"(1) By any employe of the commission or any person authorized to enforce the wildlife laws."

ORS 496.605 provides:

"The State Fish and Wildlife Director and any deputies of the director and all other peace officers of this state or any political subdivision thereof have jurisdiction of and may enforce any of the provisions of the wildlife laws."

[2] ORS 496.002(1) defines "resident" for purposes of the wildlife laws as

"a person who has resided in this state at least six consecutive months immediately prior to the date of making application for a license, tag or permit issued by the [State Fish and Wildlife Commission]."

false application for a fishing license. Although the court did not make a finding on this point, defendant stated that he had just moved back to Oregon and did not realize that he was not supposed to have a resident license. While preparing the citation, Anderson asked whether he still had an Oregon driver's license. Defendant replied that he did not, and Anderson made an inquiry over the radio to the Department of Motor Vehicles. Before Anderson received a response, defendant told him that he would find that his driver's license had been suspended. The radio check confirmed that, and Anderson cited defendant for driving while suspended, leading to the conviction from which he now appeals.

Defendant moved to suppress "all evidence in this case obtained through and subsequent to the stop of the defendant by a police officer on or about July 31, 1987." He argued that Anderson lacked reasonable suspicion necessary to support a stop,[3] that the stop was without basis in statutory authority or administrative rule and that it violated Article I, section 9. He asserts that the court erred when it ruled that there was not a stop.

A "stop" occurs when a police officer uses physical force or a show of authority to restrain a person's liberty. ORS 131.605(5); *State v. Kennedy*, 290 Or 493, 498, 624 P2d 99 (1981); *State v. Warner*, 284 Or 147, 162, 585 P2d 681 (1978). "A person is 'restrained' when, in view of all of the circumstances, a reasonable person would have believed that he was not free to leave." *State v. Starr*, 91 Or App 267, 270, 754 P2d 618 (1988). At the ramp, Anderson asked defendant whether he had been fishing. He then asked to see defendant's fishing

---

[3] ORS 131.615 provides

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

ORS 131.605 provides, in part:

"(4) 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to ORS 131.625."

license. A police officer's request to see, and subsequent retention of, a person's *driver's* license is sufficient to cause a reasonable person to believe that he is not free to leave. *State v. Starr,* 91 Or App 267, 270, 754 P2d 618 (1988). Even if Anderson had retained the *fishing* license, defendant would have been free to leave. Unlike a driver's license, a person does not need a fishing license to drive away. Anderson's actions at the ramp did not constitute a restraint of defendant's liberty that would cause a reasonable person to believe that he was not free to leave. It was not a stop.[4]

■       Anderson *did* stop defendant when, after defendant drove from the ramp to Anderson's location, he cited him for a false application for a fishing license. At that time, however, Anderson had a reasonable suspicion that defendant had violated the wildlife laws by making a false statement on his application. ORS 497.400(3); ORS 496.992(1). The stop did not violate ORS 131.605 *et seq* or Article I, section 9.

Affirmed.

---

[4] Anderson, therefore, did not obtain information about defendant's address and length of residence as the result of a stop.