Argued and submitted October 23, 1991, affirmed July 22, reconsideration denied
October 14, petition for review denied October 27, 1992 (314 Or 574)

STATE OF OREGON,
*Respondent,*

*v.*

ARVIN GUY LUNOW,
*Appellant.*

(CR 89-477; CA A66464)

835 P2d 129

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Kaye E. Sunderland, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his convictions for driving while his operator's license was suspended, ORS 811.182, and driving while his license was revoked. ORS 811.182. He contends that the court erred in denying his motion to suppress evidence on the ground that the arresting officer illegally stopped him. We affirm.

■    Oregon State Trooper Seaholm was assigned to fish and game law enforcement and was patrolling a wooded mountain area. After he had issued a citation for a hunting violation in an unrelated incident, he backed his marked police vehicle, a white pickup, onto a Forest Service road. He turned off the lights and the engine and completed the paper work associated with the citation that he had just issued. The court, in its written order, described the events that followed:

> "1.  The questioned incident occurred on October 29, 1989 at about 8:35 pm on United States Forest Service Road number 14 in Yamhill County, Oregon. This area was commonly used for hunting and it was during a hunting season.

> "2.  Trooper Seaholm was parked on the shoulder of the roadway. There was room to the side for the defendant to drive by the officer.

> "3.  The defendant stopped his vehicle shortly in front of the officer's vehicle. The officer waited a moment, then got out of his vehicle and approached the defendant's vehicle.

> "4.  The officer noticed the defendant and his companions were dressed in hunting clothes and there was a rifle in the vehicle.

> "5.  The officer asked the defendant and his companions for their hunting licenses and drivers license[s] to cross check the licenses for validity. The defendant admitted he was suspended."

Defendant's principal contention in the trial court and here is that the position of the officer's vehicle on the narrow road constituted a roadblock and, because he had no reasonable suspicion that defendant had committed a crime to justify the stop, it was an unlawful roadblock. His argument that there was a roadblock is premised on his own testimony that he could not get around the officer's pickup and that the officer signaled him to stop. The court specifically found that defendant's testimony was not credible and

that there was room to drive by the police vehicle.[1] The officer testified that, when defendant did not drive on, he waited a minute and then went up to see if there was a problem. Under the circumstances, there was no "roadblock," stop or seizure of defendant at the time the officer approached defendant's pickup. *State v. Holmes*, 311 Or 400, 813 P2d 28 (1991).

■ Defendant next argues that, even if the officer had not set up a roadblock to stop him, the officer conducted an unauthorized stop by requesting his hunting license.[2] Defendant recognizes our holding in *State v. Hammond*, 99 Or App 293, 781 P2d 1243 (1989), *rev den* 309 Or 291 (1990), but argues that that case is distinguishable.

In *Hammond*, a state police fish and game officer saw the defendant pulling his boat out of the water. He asked the defendant if he had been fishing. When the defendant said yes, the officer asked for his fishing license, which he produced. The officer checked the defendant's address and, after learning that the defendant had not lived there long enough to have a resident fishing license, told him that he was going to issue him a citation for making a false application for a resident fishing license. He then asked the defendant about his driver's license, and the defendant said that it was suspended. In the subsequent prosecution for driving while suspended, the defendant moved to suppress all of the evidence on the ground that, by asking for the defendant's fishing license, the officer had made an unauthorized stop. We held that asking for the defendant's fishing license was not a stop.

Defendant argues that *Hammond* is distinguishable, because, here, Seaholm also asked for his driver's license. The request by an officer to see a motorist's driver's license does not alone constitute a stop. We summarized that concept in

---

[1] The court recited its oral findings, which are essentially the same as the written ones. However, in the oral recitation, the court specifically found that defendant was not a credible witness.

[2] Defendant does not appear to argue that the request for his hunting license was impermissible. ORS 497.036 provides:

"The holder of any license * * * to * * * hunt * * * must consent to the inspection of any such license * * *:

"(1) By any employee of the commission or any person authorized to enforce the wildlife laws."

*State v. Jackson*, 91 Or App 425, 428, 755 P2d 732, *rev den* 306 Or 661 (1988):

> "The request for and receipt of identification did not elevate the encounter to a stop. It is the *retention* of a license or identification card, usually for investigatory purposes, that restrains a person from leaving. *See, e.g., State v. Painter*, 296 Or 422, 676 P2d 309 (1984)." (Emphasis in original.)

The officer requested defendant's operator's license but did not receive it or retain it. When defendant volunteered that his license was suspended, the officer had a basis to detain him to run a radio check on the status of his license and to issue a citation. There was no stop of defendant and no violation of ORS 131.605 or Article I, section 9, of the Oregon Constitution.

Although defendant cites a few federal cases, he makes no separate argument that the officer's conduct violated the Fourth Amendment.

Defendant's final argument is that ORS 497.036, which provides that any holder of a hunting license consents to inspection by authorized persons, authorizes a search without appropriately delineated criteria. He makes that argument for the first time on appeal. It was not litigated below, and we decline to address it on appeal.

Affirmed.