Argued and submitted January 31, vacated in part; remanded for further
proceedings August 28, 1996

STATE OF OREGON,
*Respondent,*

*v.*

TIMOTHY ROBERT BAILEY,
*Appellant.*

(94CR1611 and 94CR1957;
CA A87139 (Control) and A88034)

■■■■■■■■■■■■■■■

924 P2d 833

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Liana Gioia Ramfjord, Assistant Attorney General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992, and assigns error to the denial of his motion to suppress evidence. We vacate the conviction and remand for further findings pertaining to the lawfulness of the search.

The facts, as found by the trial court, are as follows: On the night of September 11, 1994, Myrtle Point Reserve Police Officer Gwartney saw defendant looking in the windows and trying the door handles of a business establishment. Gwartney contacted Walker, another officer, and reported his observations.

Walker responded and saw defendant starting to drive away. Walker noticed that defendant's truck did not have a license plate light, which is a violation of the motor vehicle code, and turned on his overhead lights and stopped defendant, based both on the traffic infraction and on Gwartney's observations.

Walker approached defendant and asked him for his license, registration, and proof of insurance. Defendant provided the documents and explained that he was looking for someone at a ceramics store. During that discussion, Walker saw a holstered pistol on the seat of the truck, and, when asked, defendant acknowledged that it was loaded. Walker took the pistol back to his patrol car, contacted his dispatcher, and learned that defendant's paperwork was in order and the weapon was not stolen. However, Walker was unable to determine from the dispatcher whether defendant was a convicted felon,[1] and, consequently, sent another deputy, Hermann, to call the dispatcher on a pay phone to clarify defendant's criminal record.[2]

Before Hermann received a response, Walker turned off his overhead lights and, while retaining defendant's gun,[3]

---

[1] Walker described the response to his inquiry as "nebulous," because the radio dispatchers "weren't sure about his prior felony convictions."

[2] It is not entirely clear why Hermann needed to use a pay phone. There is some suggestion in the record that aerial interference was garbling radio transmissions.

[3] Conversely, defendant testified that Walker returned the gun to him. The trial court adopted Walker's testimony on that issue.

returned defendant's license and other documents and told him that he was free to leave. Immediately thereafter, Walker asked defendant for consent to search his person and his truck. Defendant agreed.

What followed next is unclear. In particular, it is unclear from the participants' testimony and from the trial court's findings whether Walker searched defendant and his truck *before* Hermann told him that defendant had a prior felony conviction (for driving while revoked, *former* ORS 487.560, in 1982), or if the search occurred *after* Walker received that information. Walker testified:

"A. [By Officer Walker] * * * I believe that I heard from Deputy Hermann that he was a convicted felon after that.

"Q. [By the prosecutor] After the search?

"A. Right.

"Q. Of the vehicle?

"A. To the best of my recollection.

"* * * * *

"Q. [By defense counsel] Did this—did your receipt of this information [defendant's prior felony conviction] precede or follow the search of the vehicle by yourself and Deputy Hermann?

"A. I believe that I learned that after we searched the vehicle.

"Q. All right. So—and your search of the vehicle followed the sequence of events in which you shut off the overheads, returned Mr. Bailey's license to him and told him he was free to go?

"A. Search of the vehicle came after that, that's correct."

Conversely, Hermann testified:

"Q. [By the prosecutor] You were there when Mr. Bailey was patted down then?

"A. Yes.

"Q. Okay. And to your knowledge, then, the request for consent to search the vehicle was immediately after the patdown?

"A. I believe so, yes. I would only—I'm not positive, but I believe I had returned from calling on the phone prior to the search of the vehicle, but I am not sure.

"* * * * *

"Q. [By the court] When you returned from the pay phone, is it your recollection that you immediately told Officer Walker about the felony conviction?

"A. I could only testify to the fact that I told him sometime during the time probably before we got into an interdiction stop or a search, sometime in that time frame.

"* * * * *

"Q. [By the court] All right. And is it your best belief that the conversation you heard concerning the request for consent to search occurred before or after you gave him that information about the felony conviction?

"A. The best I could tell you some time during. I'm not positive.

"Q. Okay. Is it possible that you did not tell him about that information until after the search was completed?

"A. It's possible, yes.

"Q. Does that square with your best recollection?

"A. Again, we may have discussed it several times during the incident. I'm not sure."

Ultimately, the trial court found:

"The testimony is far less than clear as to when Walker was told by Hermann that defendant was in fact previously convicted of a felony. Based on the testimony, Walker was told about the felony conviction after the consent to search was requested and near the time when the search of the vehicle had commenced or was about to commence."

In all events, during the search of defendant's truck, the police discovered a black bag containing two small boxes that held marijuana residue and several small plastic bindles

of methamphetamine. Defendant was then arrested for possession of a controlled substance. ORS 475.992.

Defendant moved to suppress the drugs, arguing, alternatively, that the initial stop was not supported by reasonable suspicion and that, in all events, his consent to search was invalid in that that consent was procured in the context of a stop unlawfully extended by Walker's retention of defendant's gun. The trial court, in denying the motion, found that Walker had a dual purpose in making the stop—*i.e.*, both to investigate defendant's conduct as observed by Gwartney and to cite defendant for the traffic infraction—and concluded that there was reasonable suspicion for the stop under both ORS 131.615 and ORS 810.410(2).[4] The court further concluded:

> "It appears Walker decided to terminate the stop of defendant, tell him he was free to go and then seek voluntary consent to search defendant and his vehicle. The questioning seemed to suggest that there was something wrong with the officer trying to follow his training and obtain a valid consent search. It would be surprising if he testified that he acted contrary to the training he received.

> "As stated above, defendant consented to the search of his person and the vehicle. There is no evidence that the consent was coerced or otherwise obtained improperly. The consent was not the product of an unlawful stop. The consent was freely and voluntarily given by defendant."

Defendant was subsequently convicted of, *inter alia*, possession of a controlled substance. ORS 475.992.[5]

On appeal, defendant does not dispute the trial court's determination that the initial stop was supported by reasonable suspicion. Instead, he asserts that the ensuing search was unlawful because Walker's request for consent exceeded the scope of the stop. In particular, defendant argues that: (1) Walker's retention of defendant's gun, even while telling defendant that he was free to go, extended the stop; (2) Walker's request for consent exceeded the scope of

---

[4] The text of those statutes is set out below.

[5] Defendant was also convicted in the same proceeding of felon in possession of a firearm. ORS 166.270. He does not challenge that conviction.

that continuing stop; and, consequently, (3) under ORS 131.615 and ORS 810.410(3)(b), and by analogy to *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995), the fruits of the ensuing "consent" search must be suppressed.[6]

The state counters that the search was lawful for two alternative reasons. First, Walker's retention of the gun did not extend the stop; consequently, the stop had ended before Walker requested, and obtained, consent to search. Second, even if the stop was ongoing, because of Walker's retention of the gun, at the time Walker sought and obtained consent, any illegality was vitiated when the officers subsequently learned of defendant's prior felony conviction, triggering probable cause to arrest defendant as a felon in possession of a firearm. Thus, the state reasons, the search was, in all events, valid as a search incident to arrest.

The state's first argument, that retention of the weapon did not extend the stop, directly contradicts the position the state took below. As noted previously, there was conflicting evidence in the trial court as to whether Walker retained or returned defendant's gun. *See* n 3 above. The prosecutor argued that the court should find that Walker returned the gun, but expressly conceded:

"If the officer's memory serves him correctly and he had the gun in his possession, then there certainly was not a—the Defendant was not free to go and the drugs should be suppressed.

"\* \* \* \* \*

"[I]f the gun was in fact back with Officer Walker, then it was just mere verbiage, saying he was free to go was — ineffective and the drugs should be suppressed."

---

[6] Defendant does not argue here that, even if the retention of his gun did not extend the stop, Walker's request for consent, immediately after telling defendant that he was free to go, was unlawful under either ORS 131.615(3) or ORS 810.410(3)(b). *Compare Dominguez-Martinez with State v. Bonham*, 120 Or App 371, 375-76, 852 P2d 905, *rev den* 317 Or 584 (1993), and *State v. Allen*, 112 Or App 70, 826 P2d 127, *rev den* 314 Or 176 (1992) (both holding that, where officers told individuals stopped for traffic offenses that they were "free to go" and then immediately requested consent to search, the request for consent was a "separate exchange" from the stop).

Ultimately, the court found that Walker had retained the gun, but nevertheless concluded that consent was lawfully requested and óbtained. *See* 143 Or App at 290. It is unclear whether the court concluded, notwithstanding the state's concession, that, as a matter of law, retention of the gun did not extend the stop or whether it determined that, even if the stop continued, the request for consent was within the scope of the ongoing stop. The state pitches its defense of the court's ruling to the first rationale—*i.e.*, the issue that it disclaimed and conceded below—and does not purport to defend the second.

■ On first blush, it might seem appropriate to hold the state to its legal concession below. *See generally Hampton Tree Farms, Inc. v. Jewett,* 320 Or 599, 609-13, 892 P2d 683 (1995) (addressing judicial estoppel). However, such an approach cannot be squared with this court's essential function. We are an error-correcting court; we reverse or modify trial court rulings only if those rulings are erroneous as asserted by the party assigning or cross-assigning error. *See Wesley v. Woods,* 42 Or App 85, 89, 600 P2d 421 (1979). Reducing that jurisprudential abstraction to concrete terms, we must determine in this case whether the denial of the suppression motion was erroneous for the reasons defendant urges. Central to defendant's analysis is the premise that Walker's retention of the gun extended the stop. Consequently, in evaluating that analysis—in determining whether the trial court erred—we must examine, and test, that premise. That is so regardless of the state's concession below.[7]

■ We consider, then, whether, despite Walker's statement that defendant was free to go, his retention of defendant's gun extended the stop. We conclude that it did.

Walker initially stopped defendant based both on suspicion of criminal activity and for a traffic infraction. Accordingly, provisions of ORS chapter 131 and ORS chapter 810 are each applicable. ORS 131.605 defines a "stop" for

---

[7] Even when the state concedes error on appeal, we are not *automatically* bound by such concessions. *See State v. Jones,* 129 Or App 413, 421, 879 P2d 881 (1994) (Haselton, J., concurring) (appellate courts "should accept the parties' concessions of error absent 'unusual' circumstances").

criminal purposes as "a temporary restraint of a person's liberty by a police officer lawfully present in any place." ORS 131.615 provides, in part:

"(1)   A peace officer who reasonably suspects that a person has committed a crime may stop the person, and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry.

"* * * * *

"(3)   The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

ORS 810.410(3)(b) provides:

"A police officer:

"* * * * *

"May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

ORS chapter 810 does not define "stop" as used in ORS 810.410(3)(b). However, we have held that "stop" has the same meaning in the traffic context as in the nontraffic context. *See, e.g., State v. Horton,* 86 Or App 199, 201-02, 738 P2d 609 (1987):

"A 'stop' occurs when the police restrain a person's liberty by physical force or a show of authority. *State v. Warner, supra,* 284 Or at 162. A person is 'restrained' when, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968); *State v. Spenst,* 62 Or App 755, 662 P2d 5, *rev den* 295 Or 447 (1983)." *Id* at 202.

*Accord State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991).[8]

The state asserts that there was no continuation of the stop after Walker told defendant that he could go because "retention of the gun would not be sufficient to cause a reasonable person to believe he is not free to leave." As support for that analysis, the state invokes *State v. Hammond*, 99 Or App 293, 781 P2d 1243 (1989), *rev den* 309 Or 291 (1990). In *Hammond*, the defendant sought to suppress statements he made to a state game officer after the officer asked for, and may have retained,[9] the defendant's fishing license. We rejected that argument:

> "A police officer's request to see, and subsequent retention of, a person's *driver*'s license is sufficient to cause a reasonable person to believe that he is not free to leave. Even if [the game officer] had retained the *fishing* license, defendant would have been free to leave. Unlike a driver's license, a person does not need a fishing license to drive away. [The game officer's] actions at the ramp did not constitute a restraint of defendant's liberty that would cause a reasonable person to believe that he was not free to leave. It was not a stop." 99 Or App at 297 (emphasis in original; citation omitted).

*Hammond* is materially distinguishable from this case, both legally and factually. The issue there was whether retention of a fishing license *effected* a stop, not whether the retention of valuable[10] personal property in the context of a preexisting stop *continued* that stop. Moreover, unlike the state, we do not read *Hammond*'s observation that "unlike a

---

[8] In *Holmes*, the court held that a "seizure" for purposes of Article I, section 9, of the Oregon Constitution, occurs

> "(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." *Id.*, 311 Or at 409-10 (footnote omitted).

[9] In *Hammond*, we noted that the trial court made no findings as to whether the game officer actually retained the defendant's fishing license. 99 Or App at 295.

[10] We are loathe to engage in a string of "slippery slope" hypotheticals: *i.e.*, "What if the officer retained the suspect's diamond necklace?" "What if the officer retained the suspect's spare shoelace?" Still, it seems apparent that a pistol is not insubstantial property.

driver's license, a person does not need a fishing license to drive away," 99 Or App at 297, as establishing a principle that retention of property cannot effect a stop unless it directly impairs mobility.[11] Instead, viewed in the context of that opinion, that statement was merely a passing observation and not a pronouncement of doctrine. The inquiry remains whether a reasonably objective person in defendant's circumstances would have believed that he or she was free to go, notwithstanding the retention of his or her property.

Applying that test, we conclude that Walker's retention of the gun extended the initial stop. The issue is one of first impression; there is no closely analogous Oregon authority. Still, we agree with defendant that, as a matter of "common experience and common sense," *State v. Terhear/Goemmel*, 142 Or App 450, 458, 923 P2d 641 (1996), a person in defendant's position would reasonably have believed that his or her freedom of movement was significantly impaired until the officer either returned or, at least, issued a receipt for, the gun. *See Holmes*, 311 Or at 409-10. Thus, the stop was continuing at the time Walker requested, and received, consent to search.

■ The state does not dispute that, if the stop continued, Walker's request for consent unlawfully exceeded the scope of the stop, in violation of both ORS 131.615 and ORS 810.410(3)(b). That implicit concession is well founded: Walker did not testify that his request for consent pertained to the bases of the initial stop; indeed, Walker testified that, "I told him that I'd like to get his permission to search him *for controlled substances*." (Emphasis supplied.) Nor does the state dispute that, if consent was elicited in violation of ORS 131.615(3) and ORS 810.410(3)(b), the fruits of any consequent "consent" search must be suppressed. In particular, the state does not dispute defendant's argument that *Dominguez-Martinez* and analogous authority applying ORS 131.615(3), *see, e.g., State v. Harris*, 88 Or App 433, 436-37,

---

[11] The state, invoking that language, asserts, "Similarly, a person does not need a gun to drive away." Applying such a principle, while an officer's retention of a suspect's keys or driving glasses would effect a stop, retention of the suspect's paycheck would not.

745 P2d 813 (1987), compels suppression in such circumstances.

We thus conclude that the trial court erred in determining that the search was a valid consent search. However, that conclusion does not necessarily compel reversal. The state argues, as an alternative basis for affirmance, that "even if defendant's consent was not valid, the search was incident to a lawful arrest, and evidence obtained as a result of that search was properly admitted." As explained below, however, we are unable to resolve that question on this record and, consequently, remand to the trial court to make further pertinent findings.

■ The gravamen of the state's alternative argument is that, although defendant was not arrested until after his truck was searched and the drug-related evidence was discovered, the search was a valid search incident to arrest because it immediately preceded defendant's arrest and was supported by probable cause. The state is correct that a search incident to arrest may precede the arrest, if the search and arrest are proximate in time and space and if "probable cause for an arrest exists independently of evidence brought to light by the search." *State v. Elk*, 249 Or 614, 621-22, 439 P2d 1011 (1968). *Accord State v. Nevel*, 126 Or App 270, 277, 868 P2d 1338 (1994) (noting that "the record amply demonstrates" that officer had probable cause to arrest defendant at time of search incident to arrest).

The difficulty here is that Officers Walker and Hermann gave conflicting testimony as to when, relative to the search, Hermann told Walker (who conducted the search) about defendant's prior felony conviction. *See* 143 Or App at 288-89. The trial court's findings do not resolve that dispute:

> "Walker was told about the felony conviction after the consent to search was requested and near the time when the search of the vehicle had commenced or was about to commence."

That finding is explicitly ambivalent. It states that Walker learned of defendant's felony conviction either immediately before, or soon after, the search commenced. That distinction is critical in determining whether Walker had probable

cause, supporting a search incident to arrest, at the time he discovered the evidence defendant seeks to suppress. Moreover, given the findings' express language and the fact that the trial court never addressed the state's "search incident" argument, we cannot assume, as in *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968), that the trial court implicitly resolved that critical factual dispute in the state's favor.

We thus vacate defendant's conviction for possession of a controlled substance and remand to the trial court to determine when, relative to the discovery of the evidence sought to be suppressed, Hermann told Walker about defendant's prior felony conviction. If the court finds that Walker was so informed before he conducted the search, and that the other requisites for a search incident to arrest were satisfied, it should reinstate defendant's conviction for possession of a controlled substance. Conversely, if the court finds that Walker was so informed after the search commenced, defendant is entitled to a new trial, with the fruits of that search suppressed, and for resentencing on the other conviction in the case. ORS 138.222(5).

Conviction for possession of controlled substance vacated; remanded for further proceedings not inconsistent with this opinion.