Argued and submitted November 1, 1994, decision of the Court of Appeals reversed,
judgment of the circuit court reversed, and case remanded to the circuit court
June 2, 1995

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# JOSE ARAMIS DOMINGUEZ-MARTINEZ,
*Petitioner on Review.*

## (CC 91CR3018FE; CA A77460; SC S41182)

895 P2d 306

Eric R. Johansen, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition and brief was Sally L. Avera, Public Defender.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

CARSON, C. J.

Van Hoomissen, J., filed a concurring opinion in which Graber, J., joined.

## CARSON, C. J.

On December 8, 1991, an Oregon State Police Trooper saw a 1980 Cadillac with California license plates traveling north on Interstate 5. The automobile exhibited characteristics that the trooper associated with narcotics trafficking.[1] The trooper followed the automobile and, after observing it change lanes twice without signaling, he turned on his overhead flashing lights and stopped the automobile.

The trooper approached the driver's side of the automobile. Defendant, Jose Aramis Dominguez-Martinez, who was driving, told the trooper that Julio Alberto-Mirabal, the passenger, was the registered owner of the automobile. The trooper then took defendant's driver license and Alberto-Mirabal's registration back to his patrol car, where he learned by radio that the license and registration were in order. The trooper took a tape recorder from his patrol car and returned to the automobile.

This time, the trooper went to the passenger side of the automobile, where Alberto-Mirabal was sitting with the passenger door open. The trooper stood in the opening of the door with his arm resting on the upper part of the window and leaned forward to speak with defendant and Alberto-Mirabal. The trooper told the two men that he was tape recording the conversation. The trooper tested the turn signals on the automobile and found that one was defective. The trooper advised defendant and Alberto-Mirabal that he would not issue a citation, but that they should have the signal repaired in the next town. While still leaning forward into the automobile, the trooper returned the license and the registration and said, "You guys are free to go, adios."

Defendant began to start the automobile, but the trooper did not remove his arm from the automobile door. Within one or two seconds, the trooper asked: "Do you mind if I ask you a few more questions?" The trooper told the two men that there was a narcotics trafficking problem on Interstate 5. He asked if they were transporting any drugs, large

---

[1] The trial court found that the characteristics to which the trooper referred were: the type of vehicle; California plates; travel from California to Washington; young, Hispanic, male occupants; and minimal clothing or luggage.

sums of money, or weapons. They denied transporting any of those things.

The trooper then asked if he could take a "quick look" in the automobile. Alberto-Mirabal stepped out of the automobile. The trooper then asked defendant to step out, and defendant complied. Alberto-Mirabal went around and opened the trunk of the automobile and propped it open with a baseball bat. The trooper searched the trunk and found nothing of significance.

Then, the trooper signaled to Alberto-Mirabal and asked whether he also could search the passenger compartment of the automobile. Alberto-Mirabal said that he could continue the search. The trooper searched the passenger compartment and, under the back seat, discovered three kilograms of a substance that later was determined to be cocaine.

Defendant and Alberto-Mirabal each were charged with delivery of a controlled substance and possession of a controlled substance. Before trial, both defendant and Alberto-Mirabal moved to suppress the evidence found during the search of the automobile. After a hearing, the trial court denied the motions. That court concluded that, "[b]ecause the officer extended the stop after he had concluded his investigation of the traffic infraction, he violated his statutory authority to detain the defendants." Nonetheless, the trial court denied the motions to suppress because Alberto-Mirabal "freely and voluntarily" consented to the search of the automobile.

Pursuant to plea negotiations, defendant and Alberto-Mirabal waived a jury trial and were tried on stipulated facts. Both were found guilty of possession of a controlled substance,[2] and the other counts were dismissed.

---

[2] ORS 475.992(4) provides, in part:

"It is unlawful for any person knowingly or intentionally to possess a controlled substance * * *. Any person who violates this subsection with respect to:

"* * * * *

"(b) A controlled substance in Schedule II, is guilty of a Class C felony." Cocaine is a Schedule II substance. OAR 855-80-022(1)(d).

Defendant and Alberto-Mirabal appealed to the Court of Appeals, arguing, by way of a joint brief, that the trial court erred in denying their motions to suppress. The Court of Appeals affirmed the convictions without opinion. *State v. Alberto-Mirabal/Dominguez-Martinez*, 126 Or App 544, 871 P2d 133 (1994).

Defendant petitioned this court for review, again arguing that the trial court erred in denying his motion to suppress.[3] Defendant relies on both statutory and constitutional grounds.

Before reaching defendant's constitutional claim, we first consider the extent of the trooper's statutory authority in the context of a stop for a traffic infraction. *See State v. Holmes*, 311 Or 400, 404, 813 P2d 28 (1991) ("Before reaching defendant's state and federal constitutional claims, we first examine whether the deputy sheriff acted lawfully under proper authorization by a politically accountable lawmaker."). ORS 810.410(3)(b) defines the parameters of police authority to detain and investigate during a traffic stop:

"A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction *for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation.*" (Emphasis added.)

This court considered the scope of that statute in *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991). In that case, a police officer stopped the defendant because a computer records check showed that there was an arrest warrant for the registered owner of the automobile that the defendant was driving. During the detention, the officer noticed an open beer can behind the driver's seat. After the officer arrested the defendant and put him in the back seat of the patrol car, the officer picked up the can and confirmed that it contained some beer. The facts that the can contained beer and that the

---

[3] Originally, Alberto-Mirabal did not petition this court for review of the Court of Appeals' decision. In June 1994, after this court allowed review in this case, Alberto-Mirabal moved for an extension of time in which to file his petition for review, for relief from default, and for consolidation of his petition for review with the one filed in this case. This court denied that motion and severed the cases.

can was in the car were sufficient to cite the defendant for an open container violation. *See* ORS 811.170 (making it a Class B traffic infraction to keep an open receptacle of liquor in a motor vehicle upon a highway). The officer saw no other evidence of a crime. After examining the beer can, the officer searched the automobile and found methamphetamine, a mirror, and a "cut down straw." *Porter*, 312 Or at 114-15.

The defendant in *Porter* argued that the police officer exceeded the statutorily permissible scope of the detention and investigation by continuing to investigate after having found one open container of alcohol. *Id.* at 116. This court agreed with the defendant and suppressed the evidence found in the search, holding that "the search * * * exceeded the scope of investigation permitted by ORS 810.410(3)," because the officer had the authority to investigate only the traffic infraction, and the officer had ended that investigation when he determined that there was beer in the can. This court determined that there was no basis for further investigation and that the officer exceeded the scope of his authority when he searched the automobile. *Id.* at 121. This court concluded:

> "The legislature intended * * * to permit only minimal intrusions on Oregon drivers stopped for traffic infractions. The words of ORS 810.410(3)(b) reflect that intent by requiring that any investigation be 'reasonably related to the traffic infraction, identification and issuance of citation.' ORS 810.410(3) defines the authority of the police to respond to a traffic infraction; by implication, *the statute proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction.* A search that explores for evidence of other crimes or infractions is not 'reasonably related to *the* traffic infraction, identification and issuance of citation.'" *Id.* at 119-20. (First emphasis added; second emphasis in original; citation omitted.)

This court also explored the scope of a lawful traffic stop in *State v. Farley*, 308 Or 91, 775 P2d 835 (1989). In that case, a police officer stopped the defendant because his automobile had no visible license plates. As the officer walked toward the defendant's automobile, however, the officer saw a valid temporary vehicle permit on the windshield, making it permissible to operate the vehicle without plates. Nonetheless, the officer asked the defendant to produce his driver

license. The defendant gave the officer his license and told the officer that he had no insurance. The officer then checked the defendant's license on the computer and cited the defendant for driving while suspended and for driving without insurance. *Id.* at 93. Upon review, this court held that, although the initial stop was lawful, the officer had no authority to proceed with the traffic stop after he saw the temporary permit because the officer's authority under the statute ended when he discovered that the traffic infraction that he was investigating had not occurred. *Id.* at 94.[4]

From those cases, it is clear that, under ORS 810.410, a police officer has authority to stop a vehicle and detain the occupants in order to investigate a traffic infraction that he or she has witnessed.[5] It also is clear, however, that an officer who stops a person for a traffic infraction may investigate only that infraction, unless the state can point to some basis other than the traffic infraction to broaden the scope of the investigation. Moreover, it is clear that, after the investigation reasonably related to the traffic infraction is complete, an officer does not have authority under ORS 810.410 to continue to detain the person stopped for the traffic infraction.

In this case, the trooper stopped defendant for making unsignaled lane changes. Under ORS 810.410(3)(b), the trooper was authorized to conduct an investigation "reasonably related to the traffic infraction." In other words, in relation to the traffic infraction of unsignaled change of lane, the officer had authority to inspect the turn signals on the automobile, to decide whether to cite defendant or Alberto-Mirabal, and to issue a warning about the defective turn signal. *See* ORS 816.120 and 816.300 (prescribing standards for turn signals and imposing penalty for failure to comply

---

[4] The state argues that this court's holding in *State v. Farley*, 308 Or 91, 775 P2d 835 (1989) does not apply in this case because ORS 153.110(3) controls. We disagree. ORS 153.110(3) does not apply in traffic infraction cases at all; that statute concerns infractions committed in state parks. *See* Or Laws 1981, ch 692 ("[r]elating to enforcement of state park regulations"). This court's decision in *Farley* did not depend upon its citation of ORS 153.110(3) because it also relied upon ORS 810.410(3), which adequately supports the decision.

[5] Defendant does not challenge the validity of the stop itself but only the officer's authority to continue the detention and investigation after the investigation of the traffic infraction was completed.

with those standards). All those acts were "reasonably related to the traffic infraction * * * and issuance of citation." ORS 810.410(3)(b).

But, the trooper did not stop with that limited detention and focused investigation. As this court held in *Farley*:

> "[T]he legislature, in setting the limits for detention and citation of traffic offenders, did not intend to force operators of vehicles in this state to be detained by police for the minutes (be it 5 or 30) it takes to make a radio call to determine if there are any outstanding warrants for the operator. If a driver has committed no observed wrong, the legislature has directed that the driver be allowed to proceed." 308 Or at 95.

In this case, at the same time that the trooper was telling defendant and Alberto-Mirabal that they were free to go, he stood in the open doorway, and defendant could not have driven away. The trooper immediately began to question defendant and Alberto-Mirabal about narcotics trafficking and illegal weapons.[6] The trooper then asked defendant and Alberto-Mirabal to consent to a search of the automobile in which they were traveling. He asked defendant and Alberto-Mirabal to get out of the automobile while he fully searched its interior.

The trooper's authority to detain the two men dissipated when he completed the investigation "reasonably related to the traffic infraction * * * and issuance of citation." ORS 810.410(3)(b). Thus, as in *Farley*, the officer's authority to detain defendant under the statute had dissipated, and the men should have "been allowed to proceed" without further detention. Accordingly, the trooper exceeded his authority to stop and detain a motorist in order to conduct a traffic investigation under ORS 810.410(3).[7]

---

[6] There is nothing in the record to suggest that the trooper had probable cause or even reasonable suspicion that defendant or Alberto-Mirabal had committed a crime. The trooper relied upon a hunch based upon certain noncriminal characteristics. *See* note 2 above (type of vehicle; California plates; travel from California to Washington; young, Hispanic men; and lack of luggage).

[7] The state argued that, notwithstanding ORS 810.410, the trooper's request for consent to search was authorized by the general statute empowering the Oregon State Police to enforce all criminal laws, ORS 181.030. That argument ignores this court's construction of ORS 810.410 in *Porter* as both a specific grant of authority and a specific limitation on authority to stop and detain a motorist in order to

Moreover, in the circumstances of this traffic stop, we know of no other basis for this police action. We hold that the trooper had no authority to continue to detain defendant and Alberto-Mirabal beyond the time it took to investigate the unsignaled lane changes.

■ Finally, the state argues that, even if the trooper acted illegally in continuing the investigation beyond the scope of the traffic stop, any evidence found in the search of the automobile need not be suppressed because Alberto-Mirabal freely consented to the search. We disagree.

As this court held in *Porter*, "because the object of [ORS 810.410(3)] is to define the authority of officers to respond to a traffic infraction," the evidence should be suppressed when police officers exceed that authority. 312 Or at 121. *See also State v. Davis*, 295 Or 227, 236, 666 P2d 802 (1983) ("[W]hen the object of the statute is to define the authority of officers to seize or to search a person or property * * * the court has drawn the logical consequence and has given effect to the statute by *denying the state the use of evidence that it would not have secured if its officer had respected the rights that the statute was designed to protect.*" (Emphasis added.)).

As in *Porter*, the trooper in this case exceeded his authority to detain defendant in the context of a traffic stop, and the evidence that the trooper found during the ensuing investigation should be suppressed. *See also Farley*, 308 Or at 94-95 (suppressing evidence that came to an officer's attention through an unlawful request for the defendant's driver license).

Accordingly, the trial court erred in denying defendant's motion to suppress.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to that court.

---

investigate a traffic infraction. Absent some further development within the scope of the traffic stop, such as the observation of evidence that provides probable cause to suspect criminal activity, the specific grant and limitation of authority is a legislatively created closed loop, fully defining the process for stopping and detaining a motorist for the purpose of investigating a traffic infraction.

**VAN HOOMISSEN, J.,** concurring.

For the reasons that follow, I agree that the trial court erred in denying defendant's motion to suppress.

The stop here was lawful. ORS 810.410(3)(b).[1] After advising defendant that he would not issue a citation for a defective turn signal, the trooper returned defendant's driver license and the car registration and told the men that they were free to go. However, because the trooper stood in the open car doorway and did not remove his arm from the car door, in fact, the men were *not* free to go. Their continued detention, after the purpose of the stop for a traffic infraction had been completed, was unlawful. While defendant was being unlawfully detained, the trooper began to question him and his passenger about possible criminal activity unrelated to the traffic infraction for which defendant had been lawfully stopped.

On those narrow facts, I am prepared to accept the conclusion in this case that the evidence later found in the passenger compartment of the car should have been suppressed.

Graber, J., joins in this concurring opinion.

---

[1] The policy implicit in ORS 810.410(3)(b) is determined by the legislature, not this court. If it is to be modified, the legislature must make the modification. The correct interpretation of the statute is the responsibility of this court.