Argued and submitted December 21, 1995; resubmitted In Banc
September 11, 1996, affirmed January 29, 1997

# STATE OF OREGON,
## *Appellant,*

*v.*

# CHRISTIAN JOSEPH HADLEY,
## *Respondent.*

## (92-4029C2; CA A83868)

932 P2d 1194

In Banc

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Ann Kelley, Assistant Attorney General.

Ingrid MacFarlane, Deputy Public Defender, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender.

ARMSTRONG, J.

Warren, J., dissenting.

Edmonds, J., dissenting.

## ARMSTRONG, J.

The state appeals from an order granting defendant's motion to suppress evidence found in the search of his vehicle. ORS 138.060(3). Defendant consented to the search, but the court held that the officer lacked authority to request that consent. We affirm.

On November 3, 1992, Oregon State Trooper Johnson saw two vehicles being driven on a public highway, one of which was towing the other. Because the tow was being conducted in an illegal manner, Johnson turned on the overhead lights on his patrol car and stopped the drivers of the two cars for the violation. Johnson spoke to the driver of the towing vehicle and to defendant, who was steering the towed vehicle. Johnson prepared traffic citations and turned off his overhead lights, but he left his amber lights flashing. He gave defendant a citation, returned his identification, explained the citation and court process to defendant, said "take care" and began walking away. He then stopped, turned back and asked defendant if there were any controlled substances or weapons in the towed vehicle. Defendant replied "No." Johnson asked defendant for permission to search the vehicle, which defendant gave. It appears from the uncontradicted testimony of defendant at the hearing on the motion to suppress that defendant was still standing outside the car when Johnson asked for permission to search.

During the hearing on the motion to suppress, defendant testified:

"Q. Did you ever get the impression that you were free to leave?

"A. As soon as I got the ticket I thought that was the case until * * * he then asked me about my probation.

"Q. Okay, what did he ask you about your probation?

"A. He asked if I was aware that I was on probation, and I told him immediately, yes, I was. He asked what for. I had at that time * * * informed him of what it was for. Then he asked if it was okay to search me, and I told him that it was part of my probation stipulations; of course he could search me."

Johnson conducted a search of the car and found a controlled substance, methamphetamine, in it and arrested defendant. ORS 475.992(4).

The trial court granted defendant's motion to suppress evidence of the methamphetamine on the ground that the officer lacked authority to ask defendant for consent to search. The court held that the continued investigation was unlawful in the absence of reasonable suspicion that a crime had been committed. The state assigns error to that ruling, which we review for errors of law. ORS 138.220; *see State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993).

The controversy in this case arises from uncertainty about the rationale and implications of *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995). In *Dominguez-Martinez*, the court concluded that an officer's questions about narcotics and request for consent to search, after initiating a traffic stop, were unlawful under ORS 810.410(3)(b).[1] In so holding, the court stated variously:

"It also is clear * * * that an officer who stops a person for a traffic infraction may investigate only that infraction, unless the state can point to some basis other than the traffic infraction to broaden the scope of the investigation."

And,

"Moreover, it is clear that, after the investigation reasonably related to the traffic infraction is complete, an officer does not have authority under ORS 810.410 to continue to detain the person stopped for the traffic infraction."

321 Or at 212. The court then concluded:

"The trooper's authority to detain the two men dissipated when he completed the investigation 'reasonably related to the traffic infraction * * * and issuance of citation.' ORS 810.410(3)(b). Thus, as in [*State v.*] *Farley*, [308 Or 91, 775 P2d 835 (1989),] the officer's authority to detain

---

[1] ORS 810.410(3)(b) provides:

"A police officer:

"* * * * *

"May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

defendant under the statute had dissipated, and the men should have 'been allowed to proceed' without further detention. Accordingly, the trooper exceeded his authority to stop and detain a motorist in order to conduct a traffic investigation under ORS 810.410(3)."

321 Or at 213 (footnote omitted).

Thus, *Dominguez-Martinez* may reasonably be read as turning on either, or both, of two principles. First, an officer's inquiries that are unrelated to the bases of a traffic stop violate ORS 810.410(3)(b) because they exceed the permissible *scope* of the traffic stop. Second, an officer's inquiries that are unrelated to the bases of a traffic stop impermissibly *extend* a motorist's detention. It is appropriate for this court, at least in interim fashion, to amplify *Dominguez-Martinez's* holding and to provide some guidance to police agencies and lower courts as to its proper application.

■ To date, we have twice undertaken that function. *See State v. Aguilar*, 139 Or App 175, 912 P2d 379, *rev den* 323 Or 265 (1996); *State v. Foster*, 139 Or App 303, 912 P2d 377, *rev den* 323 Or 691 (1996).[2] In *Aguilar*, the officer stopped the defendant for a traffic infraction and, thereafter, elicited the defendant's consent to search. It was undisputed that the traffic stop had not ended at the time the officer obtained consent to search. Applying *Dominguez-Martinez*, we held that the officer "lacked authority, based solely on his belief that defendant had committed a traffic infraction, to ask defendant about drugs or request his consent to a search for drugs." 139 Or App at 180 (footnote omitted).[3] Accordingly,

---

[2] *Cf. State v. Bailey*, 143 Or App 285, 924 P2d 833 (1996) (stop did not end, for *Dominguez-Martinez* purposes, when officer told defendant that he was "free to go" because officer continued to retain defendant's handgun); *State v. Terhear / Goemmel*, 142 Or App 450, 923 P2d 641 (1996) (officer's statement to defendant, a passenger in a parked car, that officer had just seen defendant commit a traffic infraction effected a stop for *Dominguez-Martinez* purposes); *State v. Jones*, 141 Or App 63, 918 P2d 111 (1996) (officer's request to search suspect for drugs during traffic stop exceeded scope of traffic stop); *State v. Claxton*, 140 Or App 168, 915 P2d 421 (1996) (officer's request for consent to search car exceeded scope of traffic stop).

[3] In so holding, we rejected our dissenting colleague's suggestion that *Dominguez-Martinez* was materially distinguishable because *Dominguez-Martinez* was "about unlawful detentions or restraints of liberty after a traffic stop has ended" and, in *Aguilar*, "the questions were asked *during* the traffic stop, not after it was terminated." 139 Or App at 191 (Edmonds, J., dissenting) (emphasis in original).

*Aguilar* rests on the premise that the officer's inquiry impermissibly exceeded the scope of an ongoing traffic stop, *i.e.*, absent some independent source of reasonable suspicion, an officer cannot engage in inquiries unrelated to the bases of a traffic stop during a traffic stop.

In *State v. Foster*, the defendant owned and was a passenger in a car stopped for a traffic infraction. The driver was arrested for a parole or probation violation and placed in a patrol car. The officer who had effected the traffic stop then asked the defendant if there were drugs in the car and obtained permission to search the car. On those facts, we held that *Dominguez-Martinez* compelled suppression of the fruits of the alleged consent search, because the traffic stop had ended when the driver was arrested and placed in the patrol car, and, "[a]t that point, [the officer] needed a basis other than the traffic infraction to detain and question defendant." 139 Or App at 307.

■ Thus, in *Aguilar*, there was no dispute that the traffic stop was ongoing at the time the officer requested consent, and we based our holding on a determination that the officer's inquiries *exceeded the scope* of the ongoing traffic stop. Conversely, in *Foster*, we concluded that the traffic stop had, in fact, ended at the time the officer engaged in unrelated inquiries, and we based our holding on a determination that those inquiries impermissibly *extended the passenger / defendant's detention* from a traffic stop.

This case falls, at least factually, somewhere between *Aguilar* and *Foster*: In *Aguilar*, it was undisputed that the traffic stop was ongoing when consent was requested, and in *Foster*, it was beyond dispute that the traffic stop had ended by the time consent was requested. Here, in contrast, the issue was whether the stop had ended before Officer Johnson had requested consent to search and, even if it had, whether that request unlawfully extended defendant's detention.

■ The bright line answer to that threshold inquiry in this and similar cases is that a traffic stop continues until the motorist has had an objectively and temporally reasonable opportunity to move on. As a practical matter, that means, in virtually all instances, that the traffic stop continues for

*Dominguez-Martinez* purposes until the motorist has had a "real time" opportunity to move on. There must, in other words, be a distinct temporal "break in the action" between an officer's indication that a motorist is free to go and any unrelated inquiries.

■ ■ That clear and objectively based test is common-sensical, consistent with *Dominguez-Martinez* and *Aguilar*, and relatively easy to apply. Moreover, it gives proper effect to the restrictions embodied in ORS 810.410(3)(b). By requiring a real temporal break between the traffic stop and any unrelated inquiries, it dissipates the effects of the traffic stop detention and, consequently, "keep[s] traffic infractions decriminalized." *State v. Porter*, 312 Or 112, 119, 817 P2d 1306 (1991).[4]

■ In applying that test, the state bears the burden of proving that the requisite substantial temporal break occurred. Consent searches are an exception to the constitutional warrant requirement, *State v. Arnold*, 115 Or App 258, 261-62, 838 P2d 74 (1992), *rev den* 315 Or 312 (1993), and the state, as the proponent of the fruits of such a search, must demonstrate that consent was, in fact, validly obtained. *Id.* at 261. Because ORS 810.410(3)(b) precludes officers from seeking consent beyond the scope of a traffic stop, the state must demonstrate that: (1) the request for consent was reasonably related to the basis of the traffic stop; (2) the request for consent pertained to some independently sufficient nontraffic

---

[4] ORS 810.410(3)(b) grants limited authority to police officers to stop and detain people to investigate and cite them for traffic infractions. The legislature limited that grant of authority to ensure that prosecution of traffic offenses would not be considered to be criminal prosecution, thereby avoiding the costs and constitutional protections associated with criminal prosecutions. *See Porter*, 312 Or at 119-20. It would contradict that limitation to permit an officer to declare a stop ended and then proceed to do that which the officer could not do before the declaration and but for the stop—to inquire about criminal conduct unrelated to the stop. Therefore, to the extent that an officer uses a traffic stop to conduct a criminal investigation that is unrelated to the stop, the officer's actions exceed the authority granted by the statute.

Furthermore, inquiries equivalent to those presented in this case would detain any reasonable person from continuing on the person's way, at least to the extent necessary to listen and respond to them. Consequently, the requirement that there be a significant temporal break between the conclusion of a traffic stop and any unrelated inquiry implements the restriction in ORS 810.410(3)(b) that prohibits detention of people for purposes unrelated to traffic stops.

justification for the stop or its continuation, *Dominguez-Martinez*, 321 Or at 212; or (3) the request for consent was made after the traffic stop had ended and a real temporal break had occurred between the termination of the stop and the subsequent request for consent. Here, it is uncontroverted that Johnson's request for consent did not comport with the first or second of those conditions. Thus, the state was obligated to demonstrate the third.

■ The state did not meet that burden. That is, it failed to prove that there was a material temporal "break in the action" that afforded defendant an objectively reasonable opportunity to move on. The only evidence in this record as to the temporal break between Johnson's statement to defendant to "take care" and the ensuing request for consent was that Johnson began walking away toward his patrol car, stopped, and then "turned back" and began inquiring about controlled substances and weapons, culminating in the request for consent to search. Defendant, who had been standing outside the car when Johnson said "take care," was still standing outside the car when Johnson began the unrelated inquiries.

Given those facts, which evinced a break of no more than a few seconds, the state failed to prove the necessary material temporal "break in the action." Accordingly, the traffic stop was ongoing at the time Johnson requested consent, rendering that request invalid as exceeding the scope of the stop.

Affirmed.

**WARREN, J.,** dissenting.

The majority relies on cases in which the officer asked for consent to search *before* the traffic stop had concluded. Here, the majority ignores the fact that the traffic stop had ended and ignores the trial court's express finding on that point when it concludes that the stop continued. Curiously, in this case, the trial court held that the stop had concluded before the question was asked about narcotics was irrelevant. That question not only is relevant, the answer to it in fact should determine the outcome of this case. It should

determine whether the officer could engage defendant in a conversation unrelated to the reason for the stop.

ORS 810.410 "defines the parameters of police authority to detain and investigate *during* a traffic stop." *State v. Dominguez-Martinez*, 321 Or 206, 210, 895 P2d 306 (1995) (emphasis supplied). It is a limited grant of authority. *Id.* at 213 n 7. In relying on *Dominguez-Martinez*, the majority assumes, without saying so, that *State v. Bonham*, 120 Or App 371, 852 P2d 905, *rev den* 317 Or 584 (1993), and *State v. Allen*, 112 Or App 70, 826 P2d 127, *rev den* 314 Or 176 (1992), are no longer viable authority. However, *Dominguez-Martinez* is factually and legally different from the case at hand, and the authority of *Bonham* and *Allen* is not affected by it.

In *Dominguez-Martinez*, the trooper stopped the defendant for failing to signal but proceeded to question the car's occupants about matters unrelated to the reason for the stop, *before the traffic stop had terminated.* Although the trooper expressly told the defendant that he was free to go, the objective evidence was that he could not leave:

> "[A]t the same time that the trooper was telling [the car's occupants] that they were free to go, he stood in the [car's] open doorway, and defendant could not have driven away. The trooper immediately began to question [the occupants] about narcotics trafficking and illegal weapons." 321 Or at 213.

Accordingly, the Supreme Court held that the trooper exceeded his statutory authority by asking questions *during* the stop that were unrelated to the reason for the stop. *Id.* at 213. In other words, in *Dominguez-Martinez*, the stop had not ended no matter what the trooper said.

The majority asserts that our decisions in *State v. Aguilar*, 139 Or App 175, 912 P2d 379, *rev den* 323 Or 265 (1996), and *State v. Foster*, 139 Or App 303, 912 P2d 377, *rev den* 323 Or 691 (1996), are controlling. They are mistaken. In *Aguilar*, the officer exceeded his statutory authority by inquiring, *during* the course of the traffic stop, if the defendant had any drugs. *Id.* at 178 n 1. That question was not

related to the traffic infraction and thus unlawfully broadened the scope of the investigation beyond that permitted under the statute.

The majority's reliance on *Foster* is also misplaced. Again, in *Foster*, the officer unlawfully sought the defendant's consent to search for drugs *during* the course of the traffic stop. 139 Or App at 305. The officer lacked authority to make that inquiry because, at that point, he had completed his investigation relating to the traffic infraction. Although he had no independent basis for further investigation, the officer continued the contact with the defendant, and thus, the stop remained in effect. In *Foster*, however, we made the mistake of stating that the stop had ended at the conclusion of the officer's investigation. *Id.* at 307. That characterization was not necessary to our disposition of the case; it was also incorrect. In holding that the officer had no authority to ask the defendant for consent to search for drugs, we cited *Dominguez-Martinez* for the following rule:

> "In the absence of an independent basis, once the investigation for the traffic infraction has ended an officer lacks authority under ORS 810.410 to continue to detain and question the persons stopped for the traffic infraction. [*Dominquez-Martinez*, 321 Or at 212]." *Id.* at 306.

Our inquiry in *Foster* went to the basis for the officer's authority to ask the defendant for consent to search for drugs, it did not go to the nature of the contact between the two. Therefore, in concluding that "the stop for the traffic infraction ended when [the officer] arrested Thompson" we said more than we needed to.[1] *The reason for the stop had*

---

[1] In *Foster*, we cited *State v. Herrin*, 123 Or App 117, 858 P2d 921 (1993), *rev'd* 323 Or 188 (1996), as authority for concluding that the stop in *Foster* ended after the officer had completed his investigation into the traffic infraction. By reversing our decision in *Herrin*, the Supreme Court rejected our analysis and necessarily rejected that proposition. Our decision in *Herrin*, therefore, cannot now be understood to stand for the proposition that the stop in *Foster* ended after the officer had completed his investigation into the traffic infraction.

That rationale is also flawed because that is not what *Herrin* was about. In *Herrin*, we held that the officer's search of the defendant's car for drugs was proper because there was an independent basis for it. Again, our inquiry went solely to the source of authority for the officer's search. We did not characterize the nature of the contact between the investigating officer and the defendant, nor did we intend to. We simply noted that the statute played no part in our deliberations:

*ended, the stop had not.* The officer had no authority to seek the defendant's consent to search because, by then, even the officer's limited statutory authority to inquire about matters relating to the reason for the stop had dissipated.

None of the three cases that the majority relies on, *Dominquez-Martinez, Aguilar* and *Foster,* is on point factually with this case because in each the traffic stop had not ended. The stop in this case had ended as a matter of law.

There is nothing impermissible about a separate exchange between an officer and a car's occupants after a traffic stop has concluded. That constitutes mere conversation. Once a stop has concluded, mere conversation does not implicate ORS 810.410 and an officer can ask anything, including for consent to search. *Bonham; Allen.* The statute only governs what occurs during a traffic stop.

As the trial court found, Johnson turned off the overhead lights on his vehicle, gave defendant a citation, returned his identification, explained the citation and court process to defendant, said, "[T]ake care" and began walking way. At that point, the trial court found that defendant believed he was free to leave.[2] Although the officer did not expressly say that defendant was free to go, the objective evidence was that he was. *Allen,* 112 Or App at 73-74. Johnson's subsequent inquiry was a separate contact, and there was nothing impermissible about the question or the conversation that followed. *Bonham; Allen.* The stop had concluded as a matter of law.

Moreover, this rationale is consistent with the Supreme Court's holding in *Dominguez-Martinez.* That case appears to stand for two propositions. First, it stands for the unremarkable proposition that a police officer cannot ask for consent to search during the course of a traffic stop. Such a

---

"From that point forward, ORS 810.410(3) no longer limited [the officer's] actions; neither did it authorize them in this case." *Id.* at 120.

[2] The trial court's findings of fact in its "Order on Motion to Suppress" provide:

"6. Defendant felt free to leave after issuance of the initial traffic citation."

On review, we are bound by that finding because there is evidence in the record to support it. *State v. Miller,* 300 Or 203, 227, 709 P2d 225 (1985).

request, without some independent basis other than the traffic infraction, exceeds the officer's limited statutory authority to investigate only those matters reasonably related to the traffic infraction. Second, once the reason for the traffic stop dissipates, the officer cannot seek consent to search because then even the officer's limited statutory authority to inquire about matters relating to the reason for the stop has ended. The officer has no basis for any further investigation. Otherwise, the stop continues in effect, and that line of inquiry is tainted by the coerciveness of the stop.

In this case, the majority disregards the trial court's findings that defendant felt free to leave. It also disregards our holdings in *Bonham* and *Allen* when it says that the officer's request for consent after the conclusion of the traffic stop detained defendant and prevented him from driving away. 146 Or App at 173. As a matter of law, when a stop has concluded and defendant is free to leave, he is not detained in any legally significant way.[3]

This rationale squares with our disposition in *Aguilar*, in which we simply applied the rule from *Dominguez-Martinez* but in a different factual setting from that before us here. Accordingly, the Supreme Court's rationale in *Dominguez-Martinez* has no place in our present deliberations because we are presented with a different factual setting: The traffic stop had concluded, as a matter of law, and the officer's contact with defendant was a separate exchange. There was nothing impermissible about that under existing law.

I dissent.

Deits and Edmonds, JJ., join in this dissent.

---

[3] As a practical matter, I would agree with the majority's disposition of the case if we were starting from a clean slate. Although the law is clear, I also recognize that it depends on a fiction. In reality, the coercion inherent in all police-citizen encounters does not disappear simply because the officer tells the citizen that he or she is "free to go" and takes a step to leave the scene before pivoting to recontact the stopped individual. The bright line established by the case law does not reflect true coercive forces at work in the real world. The citizen must have a "meaningful opportunity" actually to leave the scene without further contact with the police before the exchange truly can be said to have concluded. The coercive effect of a stop does not dissipate until that occurs. Only at that time should an officer be free to initiate a conversation about matters beyond those related to the reason for the stop.

**EDMONDS, J.,** dissenting.

Although I agree with the reasoning in Judge Warren's dissent, I wish to disassociate myself from the comments in footnote 3 of his opinion. It is clear that the asking of a motorist whether he or she will consent to a search of a vehicle lawfully stopped for a traffic violation is not a violation of either the United States or the Oregon Constitutions. As I emphasized in my dissenting opinion in *State v. Aguilar,* 139 Or App 175, 912 P2d 379, *rev den* 323 Or 265 (1996), the only question is whether the legislature intended by enacting ORS 810.410(3) to prohibit an investigating officer from requesting permission to search during a traffic stop or after it has ended. As I explained there, there is nothing in the language of the statute or the legislative history underlying it . that supports a conclusion that the legislature intended the result reached by the majority in that and this case.

Judge Warren's comments and the majority's reasoning imply that the motorist's privacy interest is invaded by a request to search the stopped vehicle. The law is to the contrary. Police officers may approach lawfully stopped motorists at any time to request permission to search without implicating their privacy interests because no seizure of the person arises from the mere act of asking a question. *State v. Holmes,* 311 Or 400, 409, 813 P2d 28 (1991); *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981).

For these reasons, I dissent from the majority opinion and join Judge Warren except as qualified above.