Argued and submitted November 26, 1997, affirmed March 18, petition for review denied June 23, 1998 (327 Or 305)

STATE OF OREGON,
*Respondent,*

*v.*

AVERY JEROME BENNETT,
*Appellant.*

(C9504-32604; CA A92792)

956 P2d 990

Diane Alessi, Chief Deputy Public Defender, argued the cause for the appellant. On the brief were Sally L. Avera, Public Defender, and Mary M. Reese, Deputy Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Deits, Chief Judge,* and Landau, Judge.

LANDAU, J.

---

* Deits, C. J., *vice* Leeson, J., resigned.

### LANDAU, J.

Defendant appeals a judgment of conviction for possession of a controlled substance. ORS 475.992. He challenges the trial court's failure to suppress evidence obtained as a result of a traffic stop. We affirm.

Defendant was a passenger in a car driven by Harris. Officer Wyatt stopped the car when it drove through a busy intersection in northeast Portland and then changed lanes without properly signaling. Wyatt turned on the overhead lights of his police car, approached Harris's car and began talking to Harris. As Wyatt conversed with Harris, two other marked police cars arrived at the scene, and two officers got out of the cars. One stood near the driver's side of Harris's car, and the other stood by the passenger side. Wyatt ultimately arrested Harris for failing to display a valid driver's license. ORS 807.570. During the arrest, Wyatt saw what he thought was crack cocaine in Harris's hand.

At that point, Wyatt instructed the officers to step back from Harris's car, and they moved back approximately 30 feet, close to Wyatt's car. Wyatt then approached defendant, who was still sitting in the passenger seat of Harris's car. Standing approximately six feet away, Wyatt told defendant, "You're free to go." During the next ten seconds or so, defendant took off his safety belt, opened the door of the car, got out, and began walking away. When defendant had taken two or three steps, Wyatt asked, "Can I ask you a question?" Defendant stopped and said yes. Wyatt asked for permission to search defendant, and defendant agreed. Wyatt found a small ziplock bag in one of defendant's pockets. The bag contained what Wyatt thought looked like crack cocaine. Defendant volunteered that the substance was "bunk," fake cocaine. Wyatt asked defendant why he had fake cocaine. Defendant told Wyatt that he sold the fake cocaine and that he understood that it was not against the law to do so. Wyatt then arrested defendant for delivery of an imitation controlled substance. ORS 475.991. Subsequent testing revealed that the substance in the bag was, in fact, crack cocaine. Defendant was charged with delivery of a controlled substance.

Defendant moved to suppress the evidence of the cocaine and the statements that he made to Wyatt about selling fake cocaine. He argued that Wyatt exceeded the scope of his investigatory authority during a traffic stop when he asked defendant for permission to search. According to defendant, ORS 810.410 limits the investigatory authority of an officer to the traffic infraction that formed the reason for the stop, unless the officer develops reasonable suspicion that defendant had committed a crime. In this case, defendant argued, at the point that Wyatt asked for permission to search defendant, Wyatt lacked reasonable suspicion that he had committed any crime. The state responded that, by the time Wyatt asked for permission to search, the traffic stop had ended, and, therefore, ORS 810.410 did not constrain the officer's authority to engage in that inquiry. The trial court found the facts as we have described them. It then concluded that defendant was told that he could leave, knew that he could leave, and actually did leave before being questioned by Wyatt and that, under those circumstances, the questioning was not improper.

On appeal, defendant first assigns error to the trial court's denial of his motion to suppress evidence of the crack cocaine. He asserts essentially the same arguments that he asserted to the trial court. The state offers a number of arguments in support of the trial court's decision, including that the stop had ended by the time Wyatt asked defendant for permission to search. Because we find that argument to be dispositive, we need not address the state's alternative arguments.

ORS 810.410 provides, in relevant part:

"(3)   A police officer

"* * * * *

"(b)   May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

■ ■   Pursuant to that statute, an officer who stops a defendant for a traffic infraction may investigate only that infraction, unless the officer "can point to some basis other

than the traffic infraction to broaden the scope of the investigation." *State v. Dominguez-Martinez*, 321 Or 206, 212, 895 P2d 306 (1995). To determine whether "some basis other than the traffic infraction" exists, we apply a standard of reasonable suspicion. *State v. Aguilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996).

■     ORS 810.410 constrains the scope of an officer's investigative authority only for the duration of the traffic stop. We attempted to define the point at which a traffic stop ends for purposes of determining the scope of ORS 810.410 in *State v. Hadley*, 146 Or App 166, 932 P2d 1194 (1997). We held that

> "a traffic stop continues until the motorist has had an objectively and temporally reasonable opportunity to move on. As a practical matter, that means, in virtually all instances, that the traffic stop continues * * * until the motorist has had a 'real time' opportunity to move on. There must, in other words, be a distinct temporal 'break in the action' between an officer's indication that a motorist is free to go and any unrelated inquiries."

*Id.* at 171-72.

■     In this case, the trial court found that Wyatt told defendant that he was free to go and that defendant then opened the car door, took off his seat belt, got out of the car, closed the door and took steps away from the car and onto the sidewalk of a busy street. The court found that defendant knew that he was free to go and that he had begun to leave when Wyatt, approximately ten seconds after telling defendant that he was free to go, asked for permission to question him further. There is evidence in the record to support those findings, and we take them as binding in our analysis. *State v. Mituniewicz*, 125 Or App 41, 44, 864 P2d 1359 (1993).

■■     Given those facts, we conclude that the trial court correctly determined that defendant had an opportunity to move on and that the stop had concluded before Wyatt initiated further conversation. The time between Wyatt informing defendant that he was free to go and Wyatt's follow-up questioning was brief, to be sure. But the extent to which a defendant has the requisite "real time" opportunity to move

on after a traffic stop is not determined by measuring a particular number of seconds or minutes. It depends on the totality of the circumstances at the time. In this case, those circumstances include the fact that defendant was told that he could go, that he understood that he could go, that he did in fact go, and that he did so in a busy urban street.

Defendant asserts other assignments of error. We have considered each of them carefully and reject them without further discussion.

Affirmed.