Argued and submitted December 23, 1997, affirmed April 1, petition for review denied July 21, 1998 (327 Or 432)

## STATE OF OREGON,
*Respondent,*

*v.*

## CAROLYN ELIZABETH HESTER,
*Appellant.*

(C951612CR; CA A94876)

956 P2d 1052

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant was convicted of possession of a controlled substance. ORS 475.992. She appeals the trial court's denial of her pretrial motion to suppress evidence of methamphetamine in her possession. We affirm.

On June 8, 1995, at approximately 3:00 a.m., Officer Noragon stopped a car in which defendant was a passenger when the driver failed to signal, apparently as she pulled over to pick up a friend. The car was owned by defendant. Noragon issued the driver a citation for driving while uninsured and told the driver and defendant that they were free to leave. Defendant and the driver then waited in the car at the scene of the stop while Trisha Drey, the person who defendant and the driver intended to pick up, looked for some personal property that she had lost in the bushes along the side of the road. Drey asked Noragon if he would help her look for her property. He agreed, turned off his overhead lights on his patrol car and assisted Drey by shining a flashlight into the bushes. They were unsuccessful in finding the lost property, and, at that point, the officer again advised the occupants of the vehicle that they were free to leave.

Noragon then began to walk back to his patrol car. The driver of the car started up the engine in the vehicle and began to roll slowly forward. Noragon then walked back to the passenger side of the car and asked defendant through the open passenger window if he could talk to her for just a minute. Defendant agreed and got out of the vehicle. Noragon then advised her that she was free to leave, but also explained that it was part of his job to ask about property, drugs and guns. He asked defendant if she was in possession of any of those items. She indicated that she was not.

Noragon then requested if he could search the vehicle "for this type of property," and defendant agreed. Noragon asked defendant if she had any weapons on her person. Defendant said "No," but that she did have a knife in her purse. Noragon asked if he could remove the knife from the purse, and defendant said she wanted to remove the knife. Noragon informed her that "for officer safety reasons," he needed to remove the knife. After a discussion, defendant

allowed Noragon to remove the knife. While searching for the knife, Noragon found a box that he recognized as a scale. Defendant said the scale was her boyfriend's and consented to Noragon's request to examine it. Noragon opened the box and confirmed that it was a scale.

Noragon also saw a silver container in the purse. He requested permission to look inside it, and defendant agreed. Noragon discovered "50 to 100 small little plastic baggies," which defendant explained were used to store jewelry. Noragon recognized the baggies as common receptacles used to package drugs. He asked defendant where he would find drugs in her property. Defendant then picked up her wallet from the hood of the vehicle, removed a small plastic baggy from the front zipper pocket and gave it to Noragon. At that point, Noragon advised defendant of her *Miranda* rights and placed her under arrest for the charge that led to her conviction and is the subject of this appeal. The substance in the baggy later tested positive for methamphetamine.

On appeal, the only argument that defendant makes is that Noragon violated ORS 810.410(3)(b)[1] when he asked if he could search for drugs. She contends that the state failed its burden to establish that the traffic stop had ended and that the case is controlled by our holding in *State v. Hadley*, 146 Or App 166, 932 P2d 1194 (1997). In *Hadley*, we held that

"a traffic stop continues until the motorist has had an objectively and temporally reasonable opportunity to move on. As a practical matter, that means, in virtually all instances, that the traffic stop continues for *Dominguez-Martinez*[, 321 Or 206, 895 P2d 306 (1995),] purposes until the motorist has had a 'real time' opportunity to move on. There must, in other words, be a distinct temporal 'break in the action' between an officer's indication that a motorist is free to go and any unrelated inquiries." 146 Or App at 171-72.

---

[1] ORS 810.410 provides, in part:

"(3) A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

We conclude that the circumstances in this case demonstrate that there was an objectively reasonable opportunity for the vehicle to leave after the traffic stop ended and before Noragon requested consent to search. After Noragon finished issuing the citation, he told defendant and the driver that they were free to leave. He then returned to his patrol car, turned off his overhead lights and proceeded to help Drey search for her lost property. By that time, the traffic stop had clearly ended and both the driver and defendant could have left. The evidence is clear that their motivation in remaining on the scene was to wait for Drey while she searched for her property. Moreover, Noragon was then engaged in an activity that was completely unrelated to the traffic stop.

The facts of this case differ from the facts in both *Dominguez-Martinez* and *Hadley*. In *Dominguez-Martinez*, 321 Or 206, 208, 895 P2d 306 (1995), the officer told the defendant that he was free to leave, but the officer kept his arm on the vehicle door and within one or two seconds, asked if he could ask a few more questions. In *Hadley*, the officer told the defendant that he was free to leave, but the defendant was still standing outside of the car when the officer made his request to search. 146 Or App at 168. In both cases, the defendants never had an objectively reasonable opportunity to leave the scene of the stop before they were confronted with the request to search.

The converse is true here. The stop had ended when Noragon told defendant that she was free to leave and when he returned to his patrol car to turn off his lights. Moreover, Noragon told defendant that she was free to leave on three separate occasions before he requested consent to search, and an intervening event occurred while Noragon helped Drey search for her property. Defendant chose not to leave the scene so that she could wait for Drey, who had not been an occupant of the vehicle before that time. Thus, the evidence demonstrates that defendant had an objectively reasonable opportunity to drive away before Noragon made his inquiry. Accordingly, the trial court did not err in denying defendant's motion.

Because of our result, we do not reach the state's arguments regarding Ballot Measure 40 or SB 936 (Or Laws 1997, ch 313, § 1).

Affirmed.