Argued and submitted December 23, 1997, affirmed May 27, petition for review denied September 29, 1998 (327 Or 554)

STATE OF OREGON,
*Respondent,*

*v.*

SCOTT DUANE ELVERUD,
*Appellant.*

(C951725CR; CA A93602)

961 P2d 224

James N. Verner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Michael C. Livingston, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Armstrong, J., dissenting.

## EDMONDS, J.

Defendant was convicted of possession of a controlled substance. ORS 475.992. He appeals the trial court's denial of his pretrial motion to suppress evidence that led to his conviction. We affirm.

On June 24, 1995, at approximately 1:00 a.m., Officer Hess saw defendant on a bicycle on Dogwood Street in Cornelius. He noticed that defendant did not have a front light or reflectors on the bicycle, and he stopped him to advise him about the requirement for lights and reflectors. *See* ORS 815.280(2)(c). He also asked defendant for identification, and he ran the identification "through dispatch." Hess explained to defendant that he was giving him a warning for the violation, instead of issuing a citation and told defendant that "he was free to leave." Hess then testified that defendant "stepped off the sidewalk into a grassy area." He explained that defendant was "still straddling his bicycle on the sidewalk," as he had been during the entire encounter. Hess also testified that defendant then "put his hands back on the handlebars of the bicycle," and "it looked to [the officer] that he was preparing [to leave]." However, he did not leave.

Approximately five seconds later and after Hess had told defendant that he could leave, Hess, now standing on the grass, asked defendant "if he had any drugs on him." Defendant said, "Oh, no sir." Hess then asked if he could conduct a search, and defendant replied, "Sure. Do you want to look in my bag?" Hess approached defendant, searched his pants pockets and noticed a bulge in his coat pocket. He then asked if he could look in the pocket. Defendant reached into his pocket and pulled out a large ring of keys and a clear plastic baggie with a brown substance in it. Also, as defendant pulled his hand out of his pocket, a razor blade fell out. At that point, Hess arrested defendant and handcuffed him. He then read him his *Miranda* rights, which defendant indicated he understood. Hess then asked defendant if the substance in the baggie was methamphetamine, and defendant replied affirmatively.

On appeal, defendant argues that the trial court erred in denying defendant's motion to suppress the evidence

of the baggie's contents and his statements to Hess. He contends that the officer's request for consent to search exceeded his authority under ORS 810.410(3)(b)[1] and that the traffic stop had not ended when he made the request. In *State v. Hadley*, 146 Or App 166, 932 P2d 1194 (1997), we held:

> "[A] traffic stop continues until the motorist has had an objectively and temporally reasonable opportunity to move on. As a practical matter, that means, in virtually all instances, that the traffic stop continues for *Dominguez-Martinez*[, 321 Or 206, 895 P2d 306 (1995),] purposes until the motorist has had a 'real time' opportunity to move on. There must, in other words, be a distinct temporal 'break in the action' between an officer's indication that a motorist is free to go and any unrelated inquiries." *Id.* at 171-72.

We conclude that the circumstances in this case demonstrate that there was an objectively, reasonable opportunity for defendant to leave before Hess made the request for consent to search. Hess told defendant that he was free to leave and stepped off the sidewalk out of defendant's way, so that he was not prevented from leaving. Defendant was straddling his bicycle, and he had put his hands on the handlebars as if to leave. Hess testified that there was nothing that appeared to impede defendant's departure. However, for whatever reason, he paused and remained at the same location. Hess, after waiting approximately five seconds, asked defendant if he had any drugs on him. Under the circumstances, any manifestation of the officer's exercise of authority under ORS 810.410(3)(b) over defendant had dissipated.

The facts of this case differ from the facts in both *Dominguez-Martinez* and *Hadley,* on which defendant relies. In *Dominguez-Martinez*, the officer told the defendant that he was free to leave but kept his arm on the door, and within one or two seconds the officer asked if he could ask a few more

---

[1] ORS 810.410 provides, in part:

"(3) A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

questions. 321 Or at 208. In *Hadley*, the officer told the defendant that he was free to leave but then asked for consent to search while the defendant was still standing outside of the car. 146 Or App at 168. In both of those cases, the defendants never had an objectively reasonable opportunity to leave. In this case, defendant had an objective and reasonable opportunity to continue down the sidewalk on his bicycle during the five seconds that lapsed after Hess told him he was free to leave and stepped away from defendant and off the sidewalk.

Affirmed.

**ARMSTRONG, J.,** dissenting.

On the evening of June 24, 1995, at approximately 1:00 a.m., Officer Hess stopped defendant, who was riding a bicycle. After Hess warned defendant against riding a bicycle without a front light or reflectors, which is prohibited by ORS 815.280(2)(c), he told defendant that he was "free to leave." It appeared to Hess that defendant was preparing to ride away on his bicycle. *Five seconds* later Hess asked defendant "if he had any drugs on him." From that record, the majority concludes that, before Hess asked defendant "if he had any drugs on him," the traffic stop had ended because defendant had had an objectively reasonable opportunity to leave the scene of the stop. Because that conclusion is incorrect, I dissent.

ORS 810.410(3)(b), provides that a police officer "[m]ay stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation." Under that statute, unless the officer develops a reasonable suspicion that the person stopped has engaged in illegal activity other than the traffic infraction, the officer can investigate only the traffic infraction that led to the stop. *State v. Aguilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996). However, ORS 810.410(3)(b) restricts an officer's behavior only during a traffic stop. Once the traffic stop has concluded, an officer is free to engage in conversation the person or people whom the officer had stopped to investigate the traffic infraction. In this case, the state does not argue that Hess had a reasonable suspicion that defendant was in possession of a controlled substance when Hess asked defendant "if he had any drugs on him." Therefore, Hess' actions can be

justified only if the traffic stop had concluded before Hess made that inquiry. *See id*. at 185 (asking defendant about drugs during traffic stop exceeds an officer's statutory authority under ORS 810.410 unless the officer has a reasonable suspicion to support the question).

In *State v. Hadley*, 146 Or App 166, 171, 932 P2d 1194 (1997), we held that "a traffic stop continues until [the person stopped] has had an objectively and temporally reasonable opportunity to move on." In that case, a police officer stopped two cars, one of which was illegally towing the other. The defendant had been steering the car being towed, and, at some point during the course of the stop, he had gotten out of the car and stood by it. The officer issued the defendant a citation for the violation, "said 'take care' to [the] defendant and began walking away. He then stopped, turned back and asked [the] defendant if there were any controlled substances or weapons in the towed" car. *Id*. at 168. The officer subsequently asked for permission to search the car, which the defendant gave, and the officer discovered a controlled substance.

The trial court granted the defendant's motion to suppress the evidence of the controlled substance on the ground that the officer had violated ORS 810.410(3)(b) when he asked for permission to search the car. On appeal, we agreed with the trial court. We explained that

> "*a traffic stop continues until the motorist has had an objectively and temporally reasonable opportunity to move on*. As a practical matter, that means in virtually all instances, that the traffic stop continues for *Dominguez-Martinez*[, 321 Or 206, 895 P2d 306 (1995),] purposes until the motorist has had a 'real time' opportunity to move on. *There must, in other words, be a distinct temporal 'break in the action' between an officer's indication that a motorist is free to go and any unrelated inquiries*."

*Id*. at 171-72 (emphasis supplied). Because, in that case, only a few seconds had elapsed between the officer's statement, "take care," and his ensuing question about drugs and weapons, we concluded that the stop had not concluded before the officer's question; the defendant, who was still standing by the towed vehicle, had not had a reasonable opportunity to

leave the scene of the stop. Therefore, because the officer's question was not based on a reasonable suspicion, we concluded that the officer had violated ORS 810.410(3)(b).

In *State v. Bennett*, 153 Or App 60, 956 P2d 990 (1998), we applied *Hadley* and clarified that it is the totality of the circumstances, not simply the time that elapses between encounters, that should drive the determination of whether a traffic stop has concluded. In that case, the defendant was a passenger in a car that was stopped because the driver had committed a traffic infraction. During the course of the stop, the police arrested the driver. Following the arrest, an officer, who was standing approximately six feet away from the defendant, told the defendant that he was free to leave. In response, the defendant took off his safety belt, opened the door of the car, got out of the car and began walking away. After the defendant had taken two or three steps, approximately ten seconds after the officer had told him he was free to go, the officer asked the defendant if he could ask him a question. The defendant stopped and agreed to answer the question. The officer then asked the defendant if he could search him for drugs. The defendant agreed and the officer discovered what he suspected was a controlled substance.

The defendant filed a motion to suppress on the ground that the officer's request for consent unlawfully extended the traffic stop in violation of ORS 810.410. The trial court rejected the defendant's argument because the "defendant was told that he could leave, knew that he could leave, and actually did leave before being questioned by" the officer. *Id.* at 63. Therefore, the traffic stop had concluded and the officer was free to ask the defendant a question. We agreed that, under *Hadley*, the defendant had had a "real time" opportunity to leave the scene, so the traffic stop had ended before the officer's request. We explained:

"[T]he extent to which a defendant has the requisite 'real time' opportunity to move on after a traffic stop is not determined by measuring a particular number of seconds or minutes. It depends on the totality of the circumstances at the time."

*Id.* at 64-65. Considering the totality of the circumstances, we concluded that the fact that only ten seconds had elapsed

between the end of the stop and the second encounter was irrelevant in light of the fact that (1) the officer told the defendant that he could leave; (2) the defendant understood that he could leave; (3) the defendant did, in fact, leave; and (4) the manner in which he left, walking down a busy urban street, did not prevent anyone, including the officer who had just stopped him, from approaching him to engage in a conversation. Therefore, in that case, the officer's request that defendant consent to be searched did not violate ORS 810.410(3)(b).

Unlike the defendant in *Bennett*, the manner in which defendant would have left the scene in this case, by riding a bicycle, would have effectively prevented Hess from speaking to him again without stopping him. As a result, the fact that only five seconds had elapsed between Hess' statement to defendant that he was free to go and Hess' question to defendant is critical because, as a practical matter, Hess would not have had an opportunity to question defendant again unless defendant chose to remain at the scene. In other words, in order for us to conclude that the stop had concluded, we must conclude that, in under five seconds, defendant had an objectively reasonable opportunity to leave but that he chose not to exercise it.

On this record, we cannot reasonably reach that conclusion. A bicyclist who is told that he or she is free to leave the scene of a traffic stop cannot reasonably be expected to comprehend that he or she is free to leave, make the decision to leave and actually begin to leave on the bicycle in only five seconds. Just as in driving a car, there are several, almost intuitive, assessments that a bicyclist must make before riding away; those assessments take time. Moreover, there are practical obstacles to overcome before a bicyclist can begin riding, as anyone who has attempted quickly to put his or her feet in toe-clips, which are located on the pedals of many bicycles, can attest to.

Even if it were somehow possible for defendant to have overcome all of those considerations to make a quick departure from the stop, the state had the burden to establish that defendant had chosen to stay. *See Hadley*, 146 Or App at 172 ("[T]he state bears the burden of proving that the

requisite substantial temporal break occurred."). The only evidence that the state presented was that defendant was straddling his bicycle, which was facing the same direction as when Hess stopped him; that Hess stepped away from the bicycle when he told defendant that he was free to leave; and that, within five seconds, defendant had placed his hands on the bicycle handle bars. Considering the totality of the circumstances, we might conclude that, in those five seconds, defendant understood that he was free to leave and that he began preparing to leave. We cannot reasonably conclude that defendant could have actually left the scene in that time. Therefore, we cannot conclude that the traffic stop had concluded when Hess asked defendant "if he had any drugs on him."

The majority concludes otherwise. It concludes that, in under five seconds, defendant understood that he was free to leave, planned to leave, had enough time to leave, but then, "for whatever reason, he paused and remained at the same location." 154 Or App at 82. At that point, the stop concluded. Because an officer is free to engage in conversation a person who decides not to leave the scene of a stop after it concludes, *see State v. Hester*, 153 Or App 247, 956 P2d 1052 (1998),[1] the majority concludes that Hess' question did not unlawfully extend the traffic stop in violation of ORS 810.410.

The majority's conclusion defies common sense. The act of *not* riding a bicycle away from an officer five seconds

---

[1] In *Hester*, after being told that she was free to leave, the defendant decided to stay at the scene to wait for her friend, who had asked the officer to help her look for something she had lost in the bushes along the road. After a while, the officer and the defendant's friend stopped looking for the property. Again, the officer told defendant and the people she was with that they were free to leave. However, as they began to drive away, the officer walked back to the passenger side of the car and asked the defendant if he could talk to her for a minute. She agreed. The officer asked her if he could search for drugs. Eventually, he discovered a controlled substance in her purse. We concluded that the stop had concluded before the officer asked the defendant if he could search her, because the defendant had had an objectively reasonable opportunity to leave the scene when the officer and the defendant's friend were looking for the property in the bushes along the road. As a result, although the defendant did not actually leave the scene, we concluded that the officer did not violate ORS 810.410(3)(b) when he asked the defendant if he could search her for drugs.

after the completion of a stop simply cannot, reasonably, convey the message that the stopped person has chosen not to exercise her right to depart the scene. Requiring a bicyclist to react so quickly to the statement, "you are free to go," requires that the person act with amazing alacrity in order to avoid being confronted with a request that, essentially, seeks to continue the stop. In this case, the record is clear that if defendant had been given an objectively reasonable opportunity to leave the scene, he would have ridden away on his bicycle and Hess would not have been able to speak to him again without stopping him. To prevent that from occurring, Hess interrupted defendant's departure by asking defendant "if he had any drugs on him." Because defendant did not have an objectively reasonable opportunity to leave the scene between the two encounters, the traffic stop had not ended when Hess made his second inquiry. That inquiry unlawfully exceeded the scope of the traffic stop. Accordingly, any evidence discovered as a result of that inquiry should be suppressed.[2]

I dissent.

---

[2] Because the judgment in this case was entered on March 29, 1996, Senate Bill 936 does not apply to this case. *See State v. Meyers*, 153 Or App 551, 560, 958 P2d 187 (1998) (SB 936 applies only "to criminal trials pending on or after December 5, 1996, not to criminal appeals.").