Argued and submitted September 3, affirmed October 15, 1997

STATE OF OREGON,
*Appellant,*

*v.*

JONATHAN GRANT BISHOFF,
*Respondent.*

(96P-3245; CA A94989)

947 P2d 1120

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Defendant was charged with possession of controlled substances. ORS 475.992(4)(b). The state appeals from an order suppressing evidence discovered during a search of defendant's backpack and car. We review for errors of law, ORS 138.220, and affirm.

The facts are uncontroverted. In the early evening of July 3, 1996, defendant was driving his car in downtown Dallas with three friends as passengers. Officer Hughes used his police car computer system to check the car's license plate number and discovered that the registered owner's driver license was suspended. Hughes stopped defendant for the infraction of driving while suspended. After he determined that defendant was the registered owner, Hughes issued a citation and told defendant that he was not allowed to drive away in the car. None of the passengers could drive the car and, because it was parked illegally, defendant could not leave it where it was. One of defendant's passengers agreed to go to a nearby residence to ask an acquaintance who had a driver license to move the car. Hughes was prepared to wait for ten minutes before he called to have the car towed.

According to Hughes, he told defendant that defendant "was basically free to exit the vehicle if he wished." Defendant did so, carrying a backpack. Defendant walked to the other side of the car with the backpack and reached into the top zippered opening, apparently looking for something. Hughes told defendant not to reach into the backpack, and defendant withdrew his hand. A moment later Hughes, again, saw defendant with his hand in the backpack, pushing something down into it. Hughes again told defendant to get his hand out of the backpack and defendant complied. Hughes asked defendant if he could search the backpack, and defendant said no. Hughes asked why not, to which defendant replied that he had a "pot pipe" in the backpack and that he did not want to get a citation for it. At that point, Hughes told defendant to put down the backpack, placed defendant in the locked back seat of the patrol car, and searched the backpack. He found a methamphetamine kit, consisting of a snorting tube, a small rinse bottle, an amber-colored bottle with white powder residue in it, a small ziplock baggie that

also contained powder residue, a small mirror and a razor blade. Hughes tested the white powder residue and determined that it was methamphetamine. Hughes and another officer then searched the car and defendant. They found a baggie containing less than an ounce of marijuana and a small marijuana pipe. Defendant then was arrested.

At trial, defendant moved to suppress the evidence, arguing that Hughes exceeded the scope of ORS 810.410(3)[1] by questioning defendant and requesting consent to search. In the alternative, defendant argued, if the court found that the stop had ended, the conversation between Hughes and defendant after the stop was another extension of Hughes' authority over defendant, and the statements defendant made were not voluntary. The state argued that his officer safety concerns permitted Hughes to question defendant about the backpack and then to search it. The state also argued that defendant's admission that he had a "pot pipe" gave Hughes probable cause to search the backpack. The trial court made the following findings:

> "I don't find articulable facts with respect to the possession of a weapon * * *. * * * So now the next thing is the officer asks for consent. * * * And [a Supreme Court case not identified by name has] substantially limited these consent searches. * * * But anyway, so the next thing is there are no articulable facts if I follow the Supreme Court cases. Not a single one. * * * So under the Supreme Court cases, I don't think he has any authority to seek a consent."

The trial court then granted defendant's motion to suppress. The court reasoned that "the reasonable search has to be related to the reasonable stop," and indicated that, in its view, the stop for the traffic infraction had not ended when Hughes asked defendant for consent to search the backpack and questioned defendant about why he refused to consent to a search.[2]

---

[1] ORS 810.410(3) provides, in part:

"A police officer:

"(a) Shall not arrest a person for a traffic infraction.

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

[2] In a colloquy with counsel for the state, the trial court stated that it believed that this case is controlled by *State v. Bates*, 304 Or 519, 747 P2d 991 (1987). In

On appeal, the state does not argue that Hughes' questioning and search were justified by his reasonable concern for officer safety. Rather, it argues that the traffic stop had ended, that the conversation between Hughes and defendant was not a stop, and that, during the consensual conversation between Hughes and defendant, Hughes developed probable cause to search the backpack based on defendant's admission that he had a "pot pipe." *See State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) ("mere conversation" between defendant and officer requires no reasonable suspicion justification). The state concedes that the crucial question in this case is whether the traffic stop had ended when the conversation took place.

We have held that a stop for a traffic infraction under ORS 810.410 has not ended until the motorist has had an objectively and temporally reasonable opportunity to move on. There must be "a distinct temporal 'break in the action' between an officer's indication that a motorist is free to go and any unrelated inquiries." *State v. Hadley*, 146 Or App 166, 172-73, 932 P2d 1194 (1997).

Hughes testified as follows about what he told defendant after one of the passengers went to find an acquaintance to drive defendant's car:

"Q   Did you make any other statements to the defendant about whether he could leave or not?[3]

"A   He was seated in the vehicle. And I remember it was a warm evening. And it was actually still light at that time. And *I just told him that he was basically free to exit the vehicle if he wished. He didn't have to remain there anymore. He was free to exit.*

"Q   And did he exit the vehicle?

"A   Yes, he did."

(Emphasis supplied.)

---

*Bates,* the Supreme Court held that the police officer exceeded the scope of a stop for a traffic infraction by searching the defendant's car without any specific and articulable facts justifying concern for his safety. *Id.* at 527.

[3] The words "other statements" refers to the permission Hughes gave to defendant to get someone else to drive the car, so long as defendant found someone else within ten minutes.

Hughes' testimony did not establish that he informed defendant that the traffic stop was over and that defendant was free to go. Hughes merely informed defendant that defendant did not have to continue to sit in the car and that he was "free to exit." Furthermore, Hughes continued to exercise authority over defendant after he got out of the car, telling him to keep his hands out of the backpack.

Because the stop for the traffic infraction had not yet ended, and Hughes' testimony provides no basis for a reasonable suspicion that would allow him to expand his investigation, he exceeded the scope of his authority under ORS 810.410 when he asked defendant to consent to a search of the backpack and questioned defendant about his reasons for refusing to give his consent. *State v. Dominguez-Martinez*, 321 Or 206, 212, 895 P2d 306 (1995).

Nonetheless, the state argues, the evidence is admissible under Ballot Measure 40, which was enacted by the voters in November 1996.[4] We previously have held that we will not address Ballot Measure 40 issues until the Supreme Court resolves questions of its constitutionality. *State v. Nielsen*, 147 Or App 294, 296, 936 P2d 374 (1997).

The trial court did not err in granting defendant's motion to suppress.

Affirmed.

---

[4] Ballot Measure 40 requires, among other things, that Article I, sections 9 and 12, of the Oregon Constitution, "not be construed more broadly than the United States Constitution." The Oregon Supreme Court has the constitutionality of this measure under advisement.