Argued and submitted March 24, vacated and remanded for reconsideration December 9, 1998

STATE OF OREGON,
*Respondent,*

*v.*

STEVEN W. HALLMARK,
*Appellant.*

(96C20152; CA A96072)

973 P2d 908

Dan Maloney, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

LANDAU, P. J.

---

* Deits, C. J., *vice* Riggs, J., resigned.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for possession of a controlled substance. He challenges the trial court's refusal to suppress evidence obtained as a result of a traffic stop. We vacate and remand for reconsideration.

■ We review the trial court's legal conclusions for errors of law, and we will not disturb a trial court's findings of fact if they are supported by evidence in the record. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991).

Defendant was a passenger in a car driven by his brother, James Hallmark (James). Trooper Burdick stopped the car because it was traveling 72 miles per hour in a 65 miles-per-hour zone. James got out of the car and talked with Burdick on the driver's side of the car. When Burdick ran a records check, he discovered that James was driving with a suspended license and issued James a citation for that infraction and for driving with no insurance. After Burdick handed James the citation, his identification, and the car registration, he told James he was free to go. James got into the car, shut the door, put on his seat belt, started the car, and "started to drop it into gear." Meanwhile, Burdick had walked to the passenger side of the car and began talking to Officer Eavers, who had arrived on the scene a few minutes earlier. The two officers were about six feet from the passenger-side window when Burdick "bent over and asked the driver if [he] could talk with him a few minutes." James said, "sure," got out of the car again, and walked to the front of the car to talk with Burdick. Burdick asked James if he had any drugs, money, or weapons in the car, and James said that he did not. Burdick then asked if he could search the car and its contents for any of those items. James said that he could. Burdick asked James to stand at the back of the car with Eavers and then approached defendant, who still was seated in the passenger seat of the car. Burdick informed defendant that James had given him permission to search the car and asked defendant if he could search the car. Defendant replied, "sure."

Defendant then walked back to stand by his brother while Burdick searched the car. Burdick opened the glove box

and found a spoon with cotton balls and several syringes of a type that Burdick previously had seen in connection with methamphetamine or heroin use. Burdick then walked back to where defendant and James were standing and asked defendant if he could look in his pockets. Defendant said, "sure," and raised his arms. Burdick found a bindle of methamphetamine in defendant's left front coat pocket and arrested him for possession of a controlled substance.

Defendant moved to suppress the evidence of the methamphetamine, arguing, among other things, that Burdick exceeded the scope of his investigatory authority during a traffic stop when he asked defendant for permission to search. The state responded that the traffic stop ended when Burdick told James that he was free to leave and that, at that point, Burdick was free to seek the consent of defendant to search. The trial court denied the motion to suppress, and defendant was convicted of possession of a controlled substance. ORS 475.992.

On appeal, defendant assigns error to the denial of his motion to suppress. He argues that Burdick exceeded his statutory authority to act when he prolonged the traffic stop by detaining him and his brother and asking for consent to search. The state argues that Burdick gave James and defendant "an objectively and temporally reasonable opportunity to move on" before asking for consent to search, as required under *State v. Hadley*, 146 Or App 166, 171, 932 P2d 1194 (1997). Defendant replies that the break between Burdick telling James and defendant that they were free to go and asking questions beyond the scope of the traffic stop was too short under *Hadley*.

■     ORS 810.410 provides, in part:

"(3)   A police officer:

"* * * * *

"(b)   May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

Accordingly, an officer who stops a defendant for a traffic infraction may not investigate matters beyond that infraction, unless the officer "can point to some basis other than the traffic infraction to broaden the scope of the investigation." *State v. Dominguez-Martinez*, 321 Or 206, 212, 895 P2d 306 (1995). Moreover, an officer must have "reasonable suspicion" that a defendant has committed an illegal act, other than a traffic infraction, before an officer can broaden the scope of the investigation. *State v. Aguilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996).

ORS 810.410 constrains the scope of an officer's investigative authority only for the duration of the traffic stop. *Hadley*, 146 Or App at 170. We have articulated the test for determining when a traffic stop is completed in the following terms:

> "[A] traffic stop continues until the motorist has had an objectively and temporally reasonable opportunity to move on. As a practical matter, that means, in virtually all instances, that the traffic stop * * * continues until the motorist has had a 'real time' opportunity to move on. There must, in other words, be a distinct temporal 'break in the action' between an officer's indication that a motorist is free to go and any unrelated inquiries."

*Id.* at 171-72.

In *State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998), however, the Supreme Court addressed "the proper methodology for determining whether a traffic stop either continued or ended" under ORS 810.410. The court held that the proper methodology consists of a two-part inquiry: First, did the defendant subjectively believe that he was under continued detention by the police? Second, if so, was the defendant's subjective belief objectively reasonable? *Id.* at 535. The first question is one of fact to be determined by the trial court, the second is one subject to the independent assessment of the appellate court. *Id.* That two-part methodology supersedes the test that we previously described in *Hadley* for determining precisely when a stop under ORS 810.410 ends.

■ In this case, the trial court did not have the benefit of the court's decision in *Toevs*. It consequently did not have the opportunity to make findings of fact concerning the extent to

which defendant subjectively believed that, when Burdick told him he was free to go, he was, in fact, free to go. We will not make that finding for the first time on appeal. *State v. Johnson*, 120 Or App 151, 159, 851 P2d 1160, *rev den* 318 Or 26 (1993). We therefore remand the case to the trial court for the appropriate disposition in light of *Toevs*.

Vacated and remanded for reconsideration.