Submitted on remand from the Oregon Supreme Court August 29, 1995, reversed and remanded April 17, 1996

## STATE OF OREGON
*Respondent,*

*v.*

## FRANK CORNELIUS CLAXTON,
*Appellant.*

(C90-11-36228; CA A70528)

915 P2d 421

Steven V. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Defendant appealed from his convictions for possession of a controlled substance, ORS 475.992, and unlawful possession of a firearm, ORS 166.250, arguing that the trial court erred in denying his motion to suppress. We affirmed the trial court's denial of the motion, 126 Or App 35, 867 P2d 526 (1994). The Supreme Court has remanded the case for reconsideration, *State v. Claxton*, 321 Or 377, 899 P2d 690 (1995), in the light of *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995). On reconsideration, we reverse.

At midnight on October 16, 1990, Officer Rivett stopped defendant for towing a trailer that had no tail lights and illegal fenders.[1] Rivett parked her patrol vehicle, with its overhead emergency lights flashing, behind his trailer. As she approached the driver's side window, she saw defendant place his wallet on the seat. She requested his license, registration and proof of insurance. Rivett testified that defendant did not produce a license. The evidence does not indicate whether he produced the registration or proof of insurance in response to her request. The trial court found that defendant did not show Rivett a driver's license.

Rivett's partner, Reserve Officer Gallagher, was standing on the passenger side of the vehicle. As Rivett was questioning defendant, Gallagher told her that he thought that defendant was trying to conceal something under his arm. Rivett asked defendant to step out of the vehicle and walk to the sidewalk. She did a pat-down of defendant's outer clothing but found nothing.[2] Rivett then asked defendant for permission to search the car, and he consented. She asked him to wait on the sidewalk with Gallagher. She immediately got into the car and opened the wallet that was on the front seat. In the wallet, she found some identification and a plastic bag containing white powder that later proved to be methamphetamine. She continued to search the car and found an unloaded handgun and ammunition under a rag behind the driver's seat. She also discovered a drug kit in the car. She

---

[1] Defendant does not contest the lawfulness of the stop.

[2] Defendant does not challenge the pat-down.

then searched the trunk and found a rifle. After the search, she arrested defendant.

Defendant moved to suppress, *inter alia*, the evidence seized as a result of the search of defendant's wallet; *i.e.*, one bindle of powder.[3] Defendant argued that Rivett's request for consent to search defendant's car exceeded the permissible scope of a stop for a traffic infraction. The trial court denied defendant's motion, and we affirmed, explaining:

> "[A]n officer does not need authority to ask a person for consent to search. The fact that a request for consent occurs during the course of a traffic stop is a factor in evaluating the voluntariness of consent, but it does not invalidate consent. The officer's request for consent was proper. Defendant does not argue that his consent was not voluntary." *Claxton*, 126 Or App at 38.

Subsequently, in *State v. Dominguez-Martinez*, the Supreme Court held that ORS 810.410 "defines the parameters of police authority to detain and investigate during a traffic stop." 321 Or at 212. The court explained:

> "[I]t is clear that, under ORS 810.410, a police officer has authority to stop a vehicle and detain the occupants in order to investigate a traffic infraction that he or she has witnessed. *It is also clear, however, that an officer who stops a person for a traffic infraction may investigate only that infraction, unless the state can point to some basis other than the traffic infraction to broaden the scope of the investigation.*" *Id*. (Emphasis supplied; footnote omitted.)

■ On reconsideration, in the light of *Dominguez-Martinez*, we conclude that Rivett's request for consent to search defendant's car would be impermissible in the absence of a basis other than the traffic infraction. Under *Dominguez-Martinez*, Rivett lacked authority to continue her investigation by requesting defendant's consent to a search "unless the state can point to some basis other than the traffic infraction to broaden the scope of the investigation." *Id*.

---

[3] Defendant also moved to suppress the evidence of the unloaded handgun on the ground that it was irrelevant to the charge of unlawful possession of a handgun. The trial court denied that motion and defendant does not assign error to that ruling.

■ The state argues that Rivett's request for defendant's consent to a search of his vehicle was permissible based on: (1) ORS 807.570(4), which allows officers to "investigate and verify" the identity of a person lawfully detained or arrested for failure to carry or display a driver's license; or (2) officer safety concerns.[4] We disagree on both counts.

■ ORS 807.570(4) authorizes an officer, who has stopped or detained a person for failure to display a license under ORS 807.570(1)(b),[5] to take reasonable measures to investigate the person's identity:

"A police officer may detain a person arrested or cited for [failure to display a license] only for such time as reasonably necessary *to investigate and verify the person's identity*." (Emphasis supplied.)

The statute does not authorize an officer to search a defendant's car incident to an arrest for failure to display a license. *State v. Banks*, 103 Or App 312, 797 P2d 383 (1990). However, in an effort to "investigate and verify" a defendant's identity under ORS 807.570(4), an officer may search for such identity pursuant to a valid consent. *See State v. White*, 130 Or App 289, 292, 881 P2d 169 (1994).

■ We believe that the authority to investigate and verify the identity of a person who has violated ORS 807.570(1)(b) may provide an independent basis, under *Dominguez-Martinez*, to broaden the scope of an investigation during the course of a traffic stop. However, in view of the limitations imposed by *Dominguez-Martinez* on police action during the course of a traffic stop, to rely successfully on ORS

---

[4] The state also relies on *State v. Auer*, 90 Or App 459, 752 P2d 1250 (1988), and *State v. Eddy*, 107 Or App 489, 812 P2d 42 (1991), in arguing that Rivett had authority to seek defendant's consent to a search under the search incident to arrest doctrine. We reject that argument without discussion.

[5] ORS 807.570 (1)(b) provides, in part:

"A person commits the offense of failure to carry a license or to present a license to a police officer if the person:

"* * * * *

"Does not present and deliver such license or permit to a police officer when requested by the police officer under any of the following circumstances:

"(A) Upon being lawfully stopped or detained when driving a vehicle."

807.570(1)(b), the state must show that the request for consent was, in fact, made for the purpose of investigating and verifying the identity of the person detained.

Here, the state has failed to establish that that was Rivett's purpose when she asked for defendant's consent to search his car. The trial court did not make findings regarding Rivett's motivation in seeking defendant's consent,[6] and Rivett, herself, presented no direct testimony on that point. Direct testimony from an officer concerning his or her motivation for requesting consent to search during the course of a traffic stop would not always be required. Under some circumstances, an officer's motivation may be inferred from other evidence. Here, however, there is simply no evidence that Rivett's purpose was to investigate defendant's identity when she requested his consent to a search of his car, nor is there any evidence from which that intent may be inferred. The record shows that defendant did not produce his driver's license when asked. Under some circumstances, it might be permissible to draw an inference from a person's failure to produce a license that a subsequent request to consent was for the purpose of investigating the person's identity. However, that is not the case here. Rivett's request for consent did not follow immediately after defendant's failure to produce his license. The evidence shows that after Rivett asked for the license, she became concerned for her safety based on her partner's observation that defendant appeared to be concealing something under his arm. Rivett then frisked defendant and, finding nothing on his person, asked to search the car. There is simply nothing in the record that ties defendant's failure to produce his driver's license to Rivett's request to search the car.

We next address whether officer safety concerns provided Rivett a basis, other than the traffic infraction, to

---

[6] In its oral ruling, the trial court did state:

"[I]t [was] reasonable for [Rivett] to search [defendant's] wallet, which was on the front seat. I would suspect a reasonable person would expect the officer would pick up the wallet and attempt to find some identification of this person."

That comment, however, pertains to the permissible scope of Rivett's search after she had obtained defendant's consent, not to her intent in asking.

request defendant's consent to search. In *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987), the Supreme Court stated:

"[A]n officer [may] take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen may pose an immediate threat of serious physical injury to the officers or others then present."

The state argues that the record establishes that Rivett had a reasonable suspicion that defendant posed a risk to her and her partner. We disagree.

Rivett presented the following testimony at the suppression hearing:

"A. My partner, who was standing on the opposing side of the vehicle, or on the passenger's side — told me that he believed the driver was trying to conceal something under his arm.

"Q. Did you see the driver doing something?

"* * * * *

"A. No. It was what my partner told me.

"Q. Uh-huh. So what did you do then?

"A. Well, in an interest in insuring my safety and my partner's safety, I opened the car door and I said, sir, will you please step from the vehicle, and he did.

"* * * * *

"Q. Okay. And you say that was for your safety, and why were you concerned?

"A. Well, usually if somebody's going to be concealing something under their arm at midnight I'm usually concerned that there's a weapon, perhaps, or something else that could be harmful to my partner or myself.

"Q. Okay. And were you, yourself, in fear that there may be a weapon there?

"A. Yes.

"* * * * *

"Q. Okay. And what did you do then?

"A. I did a very brief cursory search of the area in which my partner had indicated this person was apparently trying to conceal something, basically around the belt area and under the arms.

"* * * * *

"A. It was just a real quick patdown, squeeze the pockets, you know, run the hands up under the arms, that type of thing.

"* * * * *

"Q. Okay. And did you find anything or feel anything?

"A. Not at that time.

"Q. Okay. What did you do at that point?

"A. I told him that I wanted to search his vehicle. And he—he gave me consent to search the vehicle."

Defendant does not challenge the legality of the frisk, only the subsequent search of his vehicle. Thus, the pertinent inquiry is whether Rivett, at the time that she requested consent to a search of defendant's vehicle, had a reasonable suspicion that defendant posed an immediate threat of serious physical injury to herself or others.

Assuming, for the sake of argument, that such reasonable suspicion existed at the time Rivett ordered defendant out of the car and subjected him to a pat-down, it had dissipated by the time that she requested his consent to a search of his vehicle. The frisk, which immediately preceded Rivett's request for consent, revealed nothing threatening. *See State v. Morgan,* 106 Or App 138, 142, 806 P2d 713, *rev den* 312 Or 235 (1991). Moreover, nothing about defendant's demeanor indicated that he posed an immediate threat of injury to the officers. *See State v. Knox,* 134 Or App 154, 159, 894 P2d 1185 (1995); *Morgan,* 106 Or App at 142. Rivett stated that defendant was "cooperative," "compliant and respectful," and "polite," and that he did not appear to be under the influence of intoxicants. Because Rivett lacked a reasonable suspicion to believe that defendant posed an immediate threat of injury, her request for consent to a search of defendant's car cannot be justified by officer safety

concerns. Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.