Argued and submitted December 22, 1998, reversed and remanded
August 11, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# BRANDON DOUGLAS MAY, JR.,
*Appellant.*

## (C9602-31431; CA A95620)

986 P2d 608

Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Sally L. Avera, Public Defender. With her on the reply brief was David E. Groom, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,\* and Armstrong, Judge.

ARMSTRONG, J.

---

\* Deits, C. J., *vice* Warren, P. J., retired.

## ARMSTRONG, J.

Defendant seeks reversal of his conviction for possession of a controlled substance. Before trial, defendant moved to suppress evidence obtained by a police officer in an inventory conducted pursuant to Portland City Code 14.10.040.[1] After the trial court denied the motion, defendant

---

[1] Portland City Code 14.10.040 provides:

"(A) A police officer will inventory the personal property in the possession of a person taken into police custody and such inventory will take place whenever:

"1. such person will be either placed in a secure police holding room or transported in the secure portion of a police vehicle.

"2. custody of the person will be transferred to another law enforcement agency, correctional facility, or 'treatment facility' as that phrase is used in ORS 426.460 or such other lawfully approved facility for the involuntary confinement of persons pursuant to Oregon Revised Statute.

"(B) The purpose of the inventory of a person in police custody will be to:

"1. Promptly identify property to establish accountability and avoid spurious claims to property; or

"2. Fulfill the requirements of ORS 133.455 to the extent that such statute may apply to certain property held by the police officer for safekeeping; or

"3. Assist in the prevention of theft of property; or

"4. Locate toxic, flammable or explosive substances; or

"5. Locate weapons and instruments that may facilitate an escape from custody or endanger law enforcement personnel; or

"6. Reduce the danger to persons and property.

"(C) Inventories of the personal property in the possession of such persons will be conducted according to the following procedures:

"1. An inventory will occur prior to placing such person into a holding room or a police vehicle, whichever occurs first. However, if reasonable suspicion to believe that the safety of either the police officer(s) or the person in custody or both are at risk, an inventory will be done as soon as safely practical prior to the transfer of custody to another law enforcement agency or facility.

"2. To complete the inventory of the personal property in the possession of such person, the police officer will remove all items of personal property from the clothing worn by such person. In addition, the officer will also remove all items of personal property from all *open containers* in the possession of such person.

"3. A *closed container* in the possession of such person will have its contents inventoried *only when*:

"(a) the closed container is to be placed in the immediate possession of such person at the time the person is placed in the secure portion of a custodial facility, police vehicle or secure police holding room;

"(b) such person requests that the closed container be with them in the secure portion of a police vehicle or a secure police holding room; or

agreed to a trial on stipulated facts and was convicted. We reverse.

While on routine patrol, Portland Police Officer Meyer saw defendant make an unsignaled turn. When Meyer pulled defendant over for the traffic infraction, defendant did not produce a driver's license. Meyer took defendant into custody for that offense and placed him in the back of Meyer's patrol car.[2] At the hearing on defendant's motion to suppress, Meyer testified that, before putting defendant into the car, he asked if he could search him "for any drugs, weapons, means of escape, and that nature." Meyer testified that defendant consented to the proposed search, but Meyer also testified that, even if defendant had not consented, he would have searched him anyway pursuant to PCC 14.10.040. In the course of the search, Meyer found a syringe in one of defendant's pockets and an object wrapped in a piece of gray cloth in another. Meyer unrolled the cloth and found a small glass pipe and a plastic bag containing a white residue that he believed to be methamphetamine. After finding the pipe, Meyer searched defendant's car and found another syringe.

Defendant was charged with possession of a controlled substance. He moved to suppress the evidence that Meyer found, arguing that the inventory was invalid because the need to conduct it was triggered by a discretionary act, that is, the decision to place defendant in the back of the patrol car, thereby invalidating it. *See State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984).[3] The state argued that Meyer had asked for and received defendant's consent to the search and that the inventory was valid because the officer had no discretion as to when or how to carry it out. The trial court concluded that, when Meyer asked for defendant's consent to search, he exceeded his authority under ORS 807.570. The

---

"(c) the closed container is designed for carrying money and/or small valuables on or about the person including, but not limited to, closed purses, closed coin purses, closed wallets and closed fanny packs."

(Emphasis added.)

[2] Meyer testified that he placed defendant under arrest for the crime of failure to produce a driver's license, but defendant claimed that he was never told that he was under arrest. Neither party disputes the fact that defendant was in custody.

[3] Defendant does not reassert that argument on appeal.

trial court further concluded, however, that the inventory was valid. It therefore denied the motion to suppress.

On appeal, defendant contends that the inventory was invalid because Meyer did not intend to transport him anywhere when he put him in the back of the patrol car. Defendant also contends that the evidence was unlawfully obtained during the inventory, because Meyer opened a closed container without first complying with the requirements of PCC 14.10.040. As a cross-assignment of error, the state contends that the trial court erred when it concluded that Meyer had exceeded his authority under ORS 807.570(4) by asking defendant for consent to search for drugs, weapons or means of escape.

■     Defendant first argues that Portland's inventory policy did not apply to him because Meyer did not intend to transport him. Subsection A of PCC 14.10.040 provides that an inventory is to take place only when a person is to be placed in a secure police holding room or is to be *transported* in the secure portion of a police vehicle. Accordingly, if Meyer did not intend to transport defendant, the inventory would be invalid. Defendant did not raise that issue below, however, so we do not reach the question of Meyer's intent. ORAP 5.45(2).[4]

Defendant next argues that Meyer exceeded his authority under the inventory policy when he opened a closed container without first determining whether it came within any of the policy's exceptions for opening such containers. *See* note 1 above. The state does not attempt to argue that Meyer made such a determination but, rather, argues only (1) that the issue was not preserved and (2) that, if the issue was preserved, the gray cloth bundle was not a closed container.

■■     During argument to the trial court, counsel for the state explained how Meyer had conducted the inventory:

---

[1] ORAP 5.45(2) provides:

"No matter assigned as error will be considered on appeal unless it was preserved in the lower court and assigned as error in the party's opening brief; provided that the appellate court may consider errors of law apparent on the face of the record."

"[T]hen there's the procedure for inventory, which the officer testified to, that he followed that. He didn't open any closed containers. He looked in the pockets. He testified he did not know that this was a drug pipe when he seized it[.]"

When defendant pointed out that Meyer had, indeed, opened a closed container when he unrolled the gray cloth, the court stated:

"It's true, he opened the wrapped closed container * * *. He unwrapped a package without identifying it as a type of thing you would carry valuables, coin purse or whatnot."

Inexplicably, although the court found that Meyer had opened a closed container without establishing a proper basis for doing so, the court then ruled that the inventory was valid. That was error. As we have said before, the Oregon Constitution places a limit on inventories by the police of property that has come into their possession lawfully but not incident to an arrest or pursuant to a warrant. That limit, as it applies to closed containers, is that "no closed, opaque container may be opened to determine what, if anything, is inside." *State v. Maynard*, 149 Or App 293, 296-97, 942 P2d 851 (1997), *rev den* 327 Or 448 (1998) (quoting *State v. Ridderbush*, 71 Or App 418, 426, 692 P2d 667 (1984)). That constitutional limit is subject to certain exceptions, but none of them applies here. Finally, we reject the state's argument that the cloth-wrapped object was not a closed container. The contents of the container were not exposed to view until Meyer removed the cloth wrapping. This case is indistinguishable from recent cases in which we have treated as "closed containers" such objects as a brown paper packet, *State v. Myers*, 156 Or App 561, 967 P2d 887 (1998), and a folded tissue, *State v. Jones*, 158 Or App 118, 972 P2d 1217 (1999).

Our decision on that issue does not dispose of the case, however, because, if the state is correct that the trial court erred in concluding that defendant's consent to search was invalid, then any evidence found as a result of that consent would be admissible. The trial court ruled that, under *State v. Claxton*, 140 Or App 168, 915 P2d 421 (1996), Meyer had no authority to ask defendant if he could search for "drugs, weapons, [or] means of escape[.]" In *Claxton*, the

defendant had been stopped for a traffic infraction and then had been detained under ORS 807.570(4). While the defendant was detained, but not arrested, the officer asked whether she could search his vehicle. Applying the analysis in *Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995), we concluded that the officer had authority only to ask for consent to search for evidence of identity. Because the record did not reflect that the officer had sought only evidence of identity, and because there was no other valid basis for a search, we concluded that the defendant's motion to suppress should have been granted.

The state argues that the trial court erred in applying *Claxton*, contending that this case differs from *Claxton* because defendant was under arrest at the time that Meyer sought consent to search. Accordingly, the state contends that the controlling law is found in *State v. Auer*, 90 Or App 459, 752 P2d 1250 (1988), in which we stated that "[a]n officer may request consent to search from a party lawfully in custody, and the request need not relate to the crime for which the party was arrested." 90 Or App at 464. Although we agree with the state that the answer to the question posed here was not answered entirely by *Claxton*, we disagree that *Auer* necessarily requires affirmance.

The issue here is whether the temporal limitation imposed by ORS 807.570(4) affects the permissible scope of a request for consent to search. In *Auer*, we concluded that any request for consent made *after* the defendant's identity had been established would be unlawful under ORS 807.570(4), because it would result in a further detention of the defendant for purposes other than verifying identity. A request made during an otherwise lawful period of detention, on the other hand, would be valid. The issue that we did not address in *Auer* was the validity under ORS 807.570(4) of a request for consent that, by delaying identification, unnecessarily prolongs a defendant's detention. In other words, if obtaining consent and conducting the ensuing search take time that otherwise would be spent verifying identity or in any way delay the verification of the defendant's identity, then does the request for consent violate the temporal strictures of ORS 807.570(4)? Our reading of *Auer* and *Claxton* leads us to conclude that the answer to that question is "Yes."

■ While *Auer* appears to support the premise that anyone under arrest is "fair game" for a request for consent to search, the language of ORS 807.570(4) and our interpretation of it in *Claxton* operate to limit that principle. The statute does not distinguish between simple detention and arrest but, rather, instructs officers that they can hold a person found to be driving without a license "only for such time as *reasonably necessary* to investigate and verify the person's identity." ORS 807.570(4) (emphasis added). Once identity has been verified, unless there are independent grounds for detention, the person must be released, whether arrested or not. The language of ORS 807.570(4) reflects a legislative intention that the process of verifying identity should impose only a minimal intrusion on Oregon drivers. Accordingly, if a request for consent to search causes an unnecessary extension of the time that it takes to investigate and verify a person's identity, then it is invalid under ORS 807.570(4) regardless of whether the person has been placed under arrest before the officer requests consent to search.

■ Here, the record does not reflect whether Meyer's investigation into defendant's identity was delayed by the request for consent or the subsequent search. When consent is raised as an issue, it is the state's burden to establish that consent was valid. *State v. Lowe*, 144 Or App 313, 317, 926 P2d 332 (1996). Accordingly, the burden was on the state to show, by a preponderance of the evidence, that the request and search did not unnecessarily delay the investigation and verification of defendant's identity. Because the trial court based its decision on the scope of the request and not on its effect on defendant's detention, it made no findings about whether the request and the search delayed the investigation of defendant's identity. Accordingly, it is unclear from this record whether the state met its burden. We therefore remand the case to the trial court for further findings in accordance with this opinion.

Reversed and remanded.