313

Argued and submitted February 27, affirmed July 3, 2002

STATE OF OREGON,
*Respondent,*

*v.*

DOUGLAS LEE TSCHANTRE,
*Appellant.*

98CR0274MA, 98CR0604MA;
A107281 (Control), A107582
(Cases Consolidated)

50 P3d 1174

Monica L. Finch, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, State Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Judge, and Osborne, Judge pro tempore.

BREWER, J.

## BREWER, J.

Defendant appeals from his conviction for possession of a controlled substance. ORS 475.992. He assigns error to the trial court's denial of his motion to suppress evidence of methamphetamine found in a cellular telephone case in defendant's possession where police opened the case under the purported authority of an inventory ordinance and police department policy. We affirm.

While on patrol in February 1998 in Bend, Officer Hayes recognized a car as one associated with armed suspects in a drug investigation. Hayes stopped the car after observing an equipment violation.[1] She approached the driver and asked for identification. As Hayes received the identification, she recognized defendant in the passenger seat. A third person was in the back seat. Officers Carney and Stone saw Hayes stop the car, and they pulled in behind her. Because of the reports of weapons, the officers ordered the occupants out of the car while Hayes checked their identifications. After discovering that none of the occupants in the vehicle had a valid driver's license and that the vehicle was uninsured, the officers impounded the vehicle and called for a tow.

Bend Police Department policy (BPD policy), implementing a city ordinance, requires officers to conduct an inventory of the contents of an impounded vehicle. As they waited for the tow, the officers began the inventory. A black leather case with a Motorola insignia was among the items they found. Hayes removed and examined the contents of the case, including a plastic bag containing what proved to be methamphetamine that she found tucked inside the case. The case also contained a charging cord and a handset base for the phone.

Defendant was arrested and charged with possession of a controlled substance. He moved to suppress the evidence found in the cell phone case, arguing that its discovery resulted from a warrantless search that was impermissible under Article I, section 9, of the Oregon Constitution. At the

---

[1] Defendant does not challenge the propriety of the stop.

hearing on defendant's motion, Hayes testified about the discovery of the case:

"[HAYES]: [Officer Stone] pulled out from the floor a black Motorola cell phone bag.

"Q: And is this it?

"A: Yes.

"Q: And do you recall how tightly shut it was?

"A: I don't recall exactly how tightly shut it was, but the lid was closed.

"Q: But you could see in from both ends?

"A: Yes.

"* * * * *

"Q: When the cell phone was pulled out from underneath the seat like that what happened?

"A: It was opened. The case was opened.

"Q: Why was it opened? The flap was opened. I mean it's kind of an open container it's not closed.

"A: I opened the flap, and we took the handset off of the phone to check for a serial number to run it to make sure it was not a stolen phone.

"Q: Okay. Did you also check that phone to make sure that it was in fact a phone?

"A: Yes.

"Q: Now according to the policy and procedures that you do when you are doing an inventory search, what are you supposed to be checking for?

"A: Items of value.

"Q: Is a cell phone an item of value?

"A: Yes.

"Q: And what are you supposed to do when you find an item of value?

"A: Oftentimes we will either give it to the owner, or we will place it in our evidence or property room for safe keeping."

The Bend inventory ordinance and the BPD policy were then received in evidence.[2] Hayes testified that she had followed the ordinance and the BPD policy with respect to removing and examining the contents of the phone case. On cross-examination, defendant's attorney focused on the status of the phone case when Hayes began examining it.

"Q: When you first got the case, it was closed?

"A: Yes.

"Q: It was dark?

"A: It was over.

"Q: It was closed?

"A: Um hmm.

"Q: Did you flash * * * your flashlight into the sides, these open sides [the prosecutor] referred to?

"A: We had our flashlights. I don't know that we specifically looked inside the ends before opening it."

The trial court denied defendant's motion to suppress in a written order that included the following determinations:

"The cellular phone bag was found pursuant to a lawful inventory search pursuant to the impound of [defendant's] vehicle.

---

[2] Bend Ordinance No. NS-1621 authorizes inventories "to identify ownership [ ] and safeguard property." Section 2(3) of that ordinance provides that "[c]losed containers shall not be searched unless it is obvious that a hazardous material is present." The BPD policy also includes a section entitled "Inventory of Vehicle Contents," which provides, in part:

"46.5.2 All vehicles seized as evidence, impounded or recovered stolen will be inventoried and all articles not of evidentiary value but of appreciable value (and not installed in the vehicle) shall be taken into custody for safekeeping. All other items will be left with the vehicle.

"* * * * *

"46.5.3 * * *

"* * * * *

"3. Containers found in vehicles will not be opened during an inventory search. However, if the packaging announces the contents as contraband, seize the container and proceed in accordance with current Oregon law."

> "The cellular phone bag was not closed at the time that it was observed by [Hayes]."

Defendant waived a jury and was convicted in a trial to the court. The court imposed a probationary sentence, and this appeal followed.

Defendant contends that the trial court erred in determining that the cell phone case was not a closed container at the time it was observed by Hayes. He argues that the officer opened the case and examined its contents in contravention of the BPD policy and the city ordinance and, accordingly, that the police conducted a warrantless search in violation of Article I, section 9, of the Oregon Constitution. Defendant also contends that the inventory was unlawful because, while conducting it, Hayes also was looking for evidence of criminal activity.

 "[E]xcept in a few carefully defined classes of cases, a search of private property without valid consent is unreasonable unless it has been authorized by a valid search warrant." *State v. Atkinson*, 298 Or 1, 4, 688 P2d 832 (1984) (internal citations, quotation marks omitted). One of those exceptions is an inventory of a lawfully impounded vehicle. *Id.* at 4-5.

> "When governmental authorities have lawful 'administrative' custody of personal property, then they may take a series of reasonable steps which, depending upon the purpose of the custody, can include a detailed 'inventory' of the property's contents. In such a context, there is no 'search' for predictable 'things to be seized' that could be 'particularly described' as the warrant requirement of Article I, section 9, contemplates." *Id.* at 8.

In this case, the state has the burden of proving the lawfulness of the inventory. ORS 133.693(4). *State v. Marsh*, 78 Or App 290, 293, 716 P2d 261, *rev den* 301 Or 320 (1986). In determining the validity of a purported inventory of a vehicle impounded by police, "the first step is to determine the source of the authority for custody." *Atkinson*, 298 Or at 9. For example, politically accountable officials may enact an ordinance that authorizes the inventory. *Id.* at 6. Second, the officer conducting the inventory cannot deviate from the procedures established in the inventory policy. *Id.* at 10.

The state implicitly concedes that, if the cell phone case was a closed container, the officer opened it in violation of the ordinance and the BPD policy. Those sources of authority only permit, respectively, the opening of closed containers that obviously contain "hazardous material" or whose "packaging announces the contents as contraband."[3] The state does not contend that either provision authorized the officer to open defendant's cell phone case if it was a closed container.[4] Defendant, in turn, does not contend that the ordinance and policy did not authorize the officer to remove and examine the contents of the case if it was not a closed container.

The parties' disagreement thus ultimately centers on two issues: (1) whether the trial court properly determined that the cell phone case was not closed before Hayes removed its contents and observed the methamphetamine; and (2) whether, in any event, the officer's belief that she might find evidence of a crime impermissibly tainted the inventory.

■■■ The resolution of the first issue depends primarily on what the drafters of the inventory ordinance intended by the term "closed" container. The ordinance does not define the term. In construing the ordinance, we give undefined words their plain, natural and ordinary meaning. *See Lincoln Loan Co. v. City of Portland*, 317 Or 192, 199, 855 P2d 151 (1993) ("The same rules that govern the construction of statutes apply to the construction of municipal ordinances."); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (describing statutory construction methodology). "Closed" ordinarily refers to a container that is "structurally enclosed" or "covered over." *Webster's Third New Int'l Dictionary*, 426 (unabridged ed 1993). That definition appears to exclude containers such as the phone case at issue here, because it is undisputed that it had openings on both

---

[3] The parties do not discuss the apparent inconsistency between the ordinance and the policy. Because it is not material to our analysis, we do not consider it further.

[4] Nor has the state argued, at trial or on appeal, that the case was not a closed container under the line of cases involving structurally enclosed containers that appear "objectively to be intended or designed primarily to store valuables in the same manner as a wallet or purse." *See, e.g., State v. Rutledge*, 162 Or App 301, 305-08, 986 P2d 99 (1999).

sides, so that the officers could see in from both ends. That evidence establishes that the case was not "structurally enclosed" or "covered over" when found by the police and, therefore, was not closed.

In arguing that the trial court erred in making that determination, defendant cites several cases in which this court regarded various objects as closed containers. *See, e.g., State v. May*, 162 Or App 317, 322, 986 P2d 608 (1999), *rev den* 330 Or 375 (2000) (cloth wrapped object); *State v. Jones*, 158 Or App 118, 972 P2d 1217, *rev den* 329 Or 287 (1999) (folded tissue); *State v. Myers*, 156 Or App 561, 967 P2d 887 (1998) (folded brown paper). However, in each case the containers did not have openings that potentially exposed *any* of their contents to view. Defendant cites no authority for the proposition that "closed container" is a legal term of art that generally is understood to encompass containers that are partially unenclosed so that some—but not necessarily all—of the contents are exposed to view when first encountered by police. Because there is no basis to infer that the promulgators of the ordinance and BPD policy had such a definition in mind in using the term "closed container," the trial court did not err in determining that the cell phone case was not closed.

Nothing we have said should be taken to suggest that the police lawfully may be authorized, by an inventory ordinance or policy, to rifle through all of the contents of any container *simply because its lid may be open. See Atkinson*, 298 Or at 10 (holding that the degree to which inventorying officers may scrutinize items is constitutionally limited). However, as noted, defendant does not contend that the ordinance and policy did not lawfully authorize the removal and examination of the contents of the cell phone case if it was not a closed container. Nor does defendant assert that the scope of intrusion authorized by the ordinance and policy exceeded constitutionally permissible bounds. Accordingly, we do not consider those issues.

■ We turn to defendant's argument that the officers could not remove and examine the contents of the cell phone case because they had an investigative purpose. That argument is refuted by *Atkinson*. There, the court held:

"If initial impoundment is valid under the rules stated in the text of this opinion, and if an inventory is conducted pursuant to and consistent with a properly authorized administrative program, that is, the inventory would be conducted in any event, *the fact that the officer also looks for evidence of criminal activity would not invalidate the inventory*." 298 Or at 11 n 7 (emphasis added).

An inventory, if lawfully conducted, does not violate its fundamental purpose of safeguarding property merely because the police believe that evidence of a crime might come to light in the process. *Id*.

Affirmed.